Coalter, J.
compared the price at which John F. Mercer sold Richards the tract of 822 acres, with that at which Charles F. Mercer bought of Perrin the whole military tract of 13,582 acres; and shewed, that the purchase money of the small parcel bought by Richards, containing not a sixteenth of the whole tract, amounted to about a third of the purchase money for which the whole tract had been bought of Perrin: whence, he said, it might be fairly inferred, that if the whole debt secured by the mortgage to Perrin, were yet unsatisfied, there would be land enough, and much more than enough, to satisfy the whole debt, without touching the painel held by Richards. But he remarked there were many circumstances (which he stated and commented on) to raise a belief that the debt to Perrin had been fully paid.
And (he proceeded) though these circumstances do not amount to absolute proof of the payment of the debt secured by the mortgage to Perrin, yet they go so strongly to establish a belief that this must be the fact, as to authorise us (as it seems to me), especially connected with the other circumstances of the case, to leave the party to his remedy on *137 the covenants in his deed. Those other circumstances are, that first stated, namely, the improbability that the parcel of land bought by Richards, could in any event be touched by Perrin’s mortgage, and the further fact, that the parties, being ignorant as to the goodness of the title to the lands given in exchange under the contract, or being apprised that difficulties of some kind or other did exist, agreed mutually to procure others to join them in the deeds and covenants of warranty, so as to secure them against such defects. This, therefore, is stronger than the ordinary case of covenants by a vendor alone; a particular security was required, and that very security given: and if, in an ordinary case, a court (under such circumstances as this case presents) might turn the party over to his covenants, a fortiori may it be done where security was required and given.
It is said, the legal title is still outstanding, and the party has a right to have it in. If, however, the debt has been paid, as there is every reason to believe, can actual notice of an unrecorded mortgage, after payment, affect the party at law ? Is it not void for want of registry, unless notice is given before the debt is discharged ? I incline to think there can be no danger to the party on this ground. The deed to Richards does not lead him, by reference, to the deed of Charles F. Mercer, to his brother and Mr. Garnett, in which alone the mortgage is mentioned; and he swears he had no actual notice of the mortgage until May 1822. At most, then, he had before that time, such implied notice as might affect him in equity in relation to the creditor, had the mortgage been undischarged. It seems to me, it could not have been the intention of the legislature, that notice of an unrecorded satisfied mortgage should affect the party at law.
I should be sorry to be obliged to say, that a mortgage executed in a foreign country, held up for so long a time, and when it must be so difficult to get releases &c. shall be a sufficient ground, on which to hold up the purchase money, especially under the circumstances attending this case. How long is it to be held up ?
*138 The mere possibility that the legal title conveyed by the mortgage may prove a disturbance to Richards’s title, resting on the intire improbability that the debt has not been paid, or that it cannot be paid out of the remaining lands, is surely too slight a ground, on which either to vacate the contract, if that was asked, or to tie up the purchase money to an indefinite period of time. The covenants and security given in the deed ought to be enough to cover this surmise of a want of clear title. How could Perrin disturb the title, either at law or in equity, if the money has been paid, or can be satisfied out of the remaining lands, or can be made out of Mercer 9
But it is further said, that the deed does not convey that small portion of the hill land, which is now embraced by the moveable line, as now established by the decree in tins case.
This seems to be an objection thought of, for the first time, in this court. It is not taken in the answer; and it is not to be supposed, that, if any doubt had been suggested in the court below, there could have been any hesitation in that court to decree a conveyance thereof, either by the party, or by a commissioner. If there were any doubt on this subject, however, and if the decree were to be reversed on such ground, the costs ought to be paid by the appellant, the appellee having substantially prevailed. But can there be any doubt as to this matter ?
The bottom land was bounded by the river on one side, and by established lines on two of the other sides, running out from the river to the hills; and was bounded on the other side by the hill land. The whole bottom land is conveyed, but the quantity was not precisely known. Had the parties established the lines along the foot of the hill, and slated them in the deed, leaving the quantity unascertained, and then made the same provisions as are now contained in the deed; it is believed, all would agree that the deed would convey one equal quantity of hill land. The parties intended a conveyance, and not an executory contract, as to the hill land; and the question is, whether, as the margin of the hill *139 land was not ascertained in the deed, but as that must now be a matter resting on opinion only, the deed can operate a conveyance ? This objection, if well founded, might (it seems to me) go further than in the argument it was thought fit to push it: it might go to shew that the contract itself, considering it executory, could not be executed for uncertainty. Who is to form this opinion, if the parties, themselves, have left it vague ? But if others can ascertain the line of division between the hill and bottom land, then so soon as that is done, it is as certain, as if the parties themselves had done it in the first instance, and the residue follows by mathematical certainty. That is certain which can be rendered so. Suppose the parties themselves, or a surveyor for them, had run this border line, so as to ascertain the quantity of bottom land, and they had thus been satisfied as to that, and the surveyor had proceeded, with like consent, to close and mark the open line, and Mercer had afterwards brought his ejectment for the land, thus embraced in the survey, is it possible, that any court of law, these facts appearing, could hesitate in deciding that the deed covered this land ?
But hero is a decree settling the boundary, in a suit brought by .Mercer, claiming to settle it precisely as it has been; and it is, in fact, by the assent of both parties to the survey, settled to their mutual satisfaction. Who can disturb this P not Mercer surely; and if he cannot, no one under him can; no one can, except one having title paramount to both. No.mere intruder could prevail against this title, thus confirmed by a decree founded on assent as to the boundaries. Hence, no one in the court below dreamed of the-necessity of a farther conveyance. The strong reasons urged in the argument in favour of this position, also furnish additional ground to shew, that no doubt ought to exist on this point.
On the whole, therefore, 1 think the decree ought to be affirmed.
The other judges concurred, and the decree was affirmed.