Parker, J.
If the appellant had not received his deed in the present case, containing a general warranty, it might somewhat vary bis equitable rights. He admits in his bill that it was sent to him soon after its date, but says he never accepted it, or spread it upon the record as evidence of his title. Wood, in his answer, *669 swears that he delivered it to the appellant, and that he made no objection to it. It is precisely such a deed as, under the title bond, Wood was bou,ud to make. It is dated in November 1828, and Beale was then in possession of the land, and had been in possession from October 1825. There is no evidence, or even averment, that he refused to accept the deed or offered to return it, or that he relinquished the possession of the land. It was near two years after he had received the deed (for the purpose, as he alleges, of examining the title) before he brought this suit; and under these circumstances, he must bo considered as accepting and holding under it. Then he is a vendee in possession under a deed with general warranty, and his title has never been questioned by a suit, either prosecuted or threatened, nor does he pretend that his warrantor is in insolvent or failing circumstances. The only ground left for entertaining him in a court of equity is that of fraudulent combination between his vendor and Janies, from whom Wood purchased. To enable a court, to relieve a vendee in possession under a deed with warranty, it must appear that the vendor knew of a defect in the title, which the purchaser had no means of discovering, and which the vendor' fraudulently suppressed. See Edwards v. M'Leay, Coop. Ch. Ca. 308. affirmed by lord Eldon on appeal, 2 Swanst. 287. It seems that if the defects be such as might have been discovered by a vigilant man, the purchaser has no remedy but such as his covenants afford ; for to an improvident purchaser the ancient maxim applies, vigilantihus, non dormientibus, jura subveniunl. The doctrine applicable to the sellers and purchasers of land, and the kind of fraud which will induce a court of equity to relieve before eviction, is so fully, and in my judgment so accurately, slated by the president in the opinion he is about to deliver, that it is unnecessary for me to enlarge on it. I will only refer to some of the cases and authorities sustaining the *670 propositions I have just advanced. They are Abbott v. Allen, 2 Johns. Ch. Rep. 519. Edwards v. M’Leay, cited above; Grantland v. Wight, 5 Munf. 295. Urnston v. Pate, 4 Cruise’s Dig. tit. 32, ch. 25, § 90, p. 420. Sugden on Vendors, 9th London edi. 553. to the end of that section; and Koger et al. v. Kane’s adm’r &c. 5 Leigh 606.
To apply these' doctrines to the case at bar.
If there are any defects in Beale’s title, there is no evidence in the cause outweighing Wood’s allegation, responsive to the bill, that he knew no more of them than Beale. If a partnership between denies and Wood had been established, it would avail nothing, except as a ground for inferring that Wood had fraudulently concealed an incumbrance or defect of title from Beale. ■But the other proof in the cause repels this inference. It is proved, I think, beyond reasonable doubt, that on the 27th of May 1825, when denies convej'ed to Wood, Beale was present, and inspected the tide deeds from Penell and Meredith to denies. He therefore knew that they conveyed no land in severalty, but only two sevenths of a large tract, supposed to contain more than 18,000 acres, which the grantors derived under the will of doseph Penell senior. ‘ He also knew that there was a survey and plat of this land in existence; that some attempts had been made to divide it, either with or without an order of court; that it was part of a larger survey, called by the settlers in that country the Sherwood survey; and that it was a particular lot in that survey, which, with certain reservations, Jenks undertook to convey, and did convey, to Wood. He saw that the deed from denies located the land in lot number 5. in the Sherwood survey; that it set out metes and bounds, called for known and ascertained corners, excepted a tract of 88 acres lying on the southwest side, belonging to Warwick Gatewood, the position of which he was perfectly acquainted with, and stated that the survey had *671 been made by Sherwood, in 1787 for Joseph Tendí senior, ; . from two oí wnose devisees JevJes derived ins title. Thus Beale, before he bought, knew all that V/ood is proved to have known about ihe title, and all that is yet known. He also knew the precise location of the tract sold to him. His title bond bound Wood to convey to him that very tract adjoining the lands of James M. Wood and Gatewood, and it was conveyed to him in the same words as Jcnks conveyed to Wood. Soon after-wards he took possession, and has hold it ever since, without any one’s asserting or threatening a claim. If he shall ever he evicted by superiour title, he has his covenant of warranty for his protection. Then what pretence has he to ask for a rescission of the contract, or that the purchase money shall be injoined ? Suppose that the partition made under the direction of the circuit superiour court is irregular, and may by possibility be set aside ; can a court of equity, upon the bare possibility of eviction, afford him relief? I think not; and am therefore for affirming the decree.
Tucker, P.
Though the cause of the appellant has been sustained with very great, ability, an attentive perusal of the record has satisfied me that there never was a plaintiff who had less title to come into equity. Of what does he complain ? He has in possession the identical land that he purchased. He has a deed for it, with general warranty, from a vendor whoso solvency he does not venture to question. He holds k (in point of fact at least) in severalty, without any contest for the possession. líe has enjoyed it for twelve years without paying for it. He has never been evicted, or sued or threatened with a suit, by any other claimant. His title is traced accurately from the Pencils, who were the owners of this portion of the Sherwood tract. He has offered no evidence of superiour title in another, no proof of the want of title in the Pencils, and no test! *672 mony to assail the right of Jenks as claiming under them, though he has industriously searched out whatever he supposed might suffice to throw suspicion over the title; a title which, from his relation to his vendor, it was rather his duty to strengthen and clear up than to impugn and destroy. Lastly, though he had received and retained his deed for eighteen months, he most unreasonably calls upon his vendor to investigate his title ah ovo, and to vindicate it against all the technical objections which ingenious and diligent counsel can suggest.
I am persuaded that many cases of this description are brought before the court, for want of a due attention to the nature and character of the relations of vendor and- vendee, and of the contracts entered into between them. I ask leave therefore to offer a few considerations on this subject.
On entering into a treaty for the purchase of land, the engagements and responsibilities assumed 'by the respective parties are important to be understood. The purchaser may be acquainted with the title in all its details, and for the consideration of an abatement of the price, may be willing to take upon himself the hazard of all defects and faults, and to exonerate the seller from all responsibility whatever. Where this is the character of the contract, he takes a deed with special warranty only; and then, no matter what may be the weakness of the tide he procures, he must abide the issue. He can have no remedy against the vendor. The rule “ caveat emptor" strictly applies. His agreeing to take a special warranty is an engagement to abide the hazard, and for that risque it will be intended that he has received compensation in the diminished price. Having taken no covenants for-his security, he has no, remedy at law. He has bought with his eyes open, and has taken a special warranty, which amounts to a negation of liability on the part of the vendor for any defect *673 whatever. These principles prevail in equity as well as at law, with the single exception that where there is a fraudulent misrepresentation or a fraudulent conceal-merit, on the part of the vendor, of a fact which the venr dee had no means of knowing, the vendee may have relief, either at law by action for the deceit, or by bill in equity. For these principles, seo Bree v. Holbech, Doug. 654. 6 T. R. 606. Sugclen on Vendors 560, 564. Edwards v. M'Leay, Cooper’s Ch. Ca. 308. modified on appeal, by the lord chancellor; 2 Swanst. 287.
It may happen, however, that the vendee will not take the hazard of the tillo. The vendor on his part may be willing to assure it lo a certain extent, but no farther. He may be very willing to encounter the hazard of eviction, talcing the chances of his title being-strengthened in its weak points by lapse of time, before a superiour title is enforced. Ho may therefore be willing to give a general warranty, which cannot be enforced until eviction, but not a covenant for good title which he may not have, and which covenant would of course be broken the instant it is entered into, if his title be defective. Thus, as in the case of special warranty he discharges himself of all responsibility, and only sells the chance of a good title, so, where he enters into a general warranty without other covenants, he makes himself only responsible for eviction, and secures to himself the advantage of every doubt which hung over his title being removed by lapse of time. In these cases, therefore, the vendee is confined to the covenant of general warranty. He has chosen, or at least has agreed upon, his remedy, and to that remedy he must be tied down. Jlowever bad his title, he cannot sue upon bis warranty unless he be evicted; and if he cannot do so at law, upon what principle can equity make the vendor liable beyond the terms of his contract ? A contract without other covenants than a warranty, is in effect an agreement between the vendor and vendee. *674 that the vendor is never to be responsible until the vendee is turned out by superiour title. How can equity make him responsible farther ? “It cannot mend men’s bargains, though it sometimes mends their assurances.” pgr jorcj Nottingham, in Maynard v. Moseley, 3 Swanst. 651. It cannot do so without making a new contract for the parties, or interpolating a new and substantive principle into that already made. Accordingly it is the established principle in the courts of equity in England, that if the conveyance has been actually executed, the purchaser can obtain no relief against the payment of the purchase money. He must look to his covenants i he has contracted for his remedy, and to that remedy he must resort. He has no right, I take it, after such a purchase with warranty, to call for the title of his vendor, to sift it to the very bran, and to injoin or recover back the purchase money upon its supposed defects. See Urmston v. Pate, 4 Cruise’s Dig. tit. 32, ch. 25, § 90, p. 420. Sugden on Vendors 558. So far from it, that if he knew of the defects and did not provide against them, he is without remedy. Co. Litt. 384. Butler’s note. For if there be no covenants for good title, it is, as I have said, equivalent to the declaration that the vendor is not to be responsible for defect of title, but only for eviction. Were it otherwise, an inducement would be held out to the vendee to hunt up defects and expose flaws in a title, which, but for his intermeddling, might in a few years have been removed and repaired t¡y time : and thus he would be converted from an ally into an enemy and spy, engaged industriously in sapping the foundations of his vendor’s title, instead of supporting and strengthening it, as he is bound to do upon every principle of equity and good faith. Possessed of the title papers, and (if the vendor has acted fairly) possessed also of all his secrets; fully informed of all the weak points of the title, he makes the confidence reposed in him the means of betrayal, *675 and seeks to get rid of a disadvantageous bargain by _ , » treachery towards one whom the law considers as conjunct in interest with himself, and from' whom it rigorously enforces a disclosure of all the facts in relation to the subject of the contract.
Such, I take it, are the considerations, in part, which sustain the rule of the courts of England. To that rule there has recently been an admitted exception. Where the seller is aware of a fact from which a defect of title arises, and which the vendee had no means of knowing, the purchaser may either maintain an action at law for the deceit, or have a rescission of the contract itself, by an appeal to a court of equity. Such is the principle laid down in Edwards v. M'Leay, Cooper’s Ch. Ca. 308. as modified by lord Eldon on appeal in the same case, 2 Swanst. 287. See also Sugden’s Vend. 565. Co. Litt. 384. a. Butler’s note, adfmem. The same principle has been followed in the courts of New York, Abbott v. Allen, 2 Johns. Ch. Rep. 519.
With us it cannot be denied that the practice has been more lax. But even with us,-relief is only given to a purchaser who has obtained his deed, where there has been an actual eviction, or where a suit is depending or threatened, or where the vendee placing himself in the attitude of the superiour claimant, can shew a clear outstanding title or incumbrance. Ralston v. Miller, 3 Rand. 44. Yancey v. Lewis, 4 Hen. & Munf. 390. Grantland v. Wight, 5 Munf. 295. Koger et al. v. Kane's adm'r &c. 5 Leigh 606. Richards v. Mercer, 1 Leigh 125, 138. See, among the New York cases, Abbott v. Allen, 2 Johns. Ch. Rep. 519. Gouverneur v. Elmendorf, 5 Id. 79. See also Id. 29. A still greater liberality has prevailed, it is true, in injoining proceedings under deeds of trust; but this rests upon peculiar principles. Gay v. Hancock et al. 1 Rand. 72. Lane v. Tidball, Gilmer 130. The distinction is adverted to by judge Cabell in Miller v. Argyle's ex'or, 5 Leigh 460. But notwithstand *676 ihg these relaxations, I am aware of no case in which . * the rights of the party have been extended in equity beyond his covenants. Until the contract is complete indeed by the execution of deeds, it is fully within the power of the court, which will not decree execution where it would be unreasonable, or where the title is essentially defective. But after a deed has been made and accepted, though our courts have given relief in anticipation of an eviction which is impending, accompanied by the danger of insolvency, they have never gone one jot beyond the covenants, except where the fraud of the vendor gives rise to a distinct cause of action independent of the covenants. Although, therefore, we may injoin a judgment or sale on the ground that the creditor is proceeding under his deed of trust, or that a suit.is threatened and the vendor is in declining circumstances, yet we can never interfere unless the seller has made himself, by some covenant, responsible for the defect complained of, 'or by fraudulent concealment has subjected himself to an action at law for damages, or to relief in equity to rescind the contract for the fraud.
Having laid down these principles, they will be found of easy application to this case. It is obvious, that as Beale received and retained for 18 months, without objection, the title sent or delivered to him by Wood, and has enjoyed uninterrupted possession, he cannot succeed unless he shews a fraudulent misrepresentation or suppression on the part of Wood. For, no eviction having taken place, no suit being in progress, none being even threatened, and there being no pretence of Wood’s insolvency, he cannot come into equity, anticipating a probable eviction, and consequent title to recovery under the warranty of his vendor. His only ground of relief is the fraud; and hence his counsel has vigorously endeavoured to maintain that position.
*677 The fraud which will entitle a purchaser to ask a rescission of his contract in equity, whether the defects complained of are guarded against by covenants of title or not, is that which consists in misrepresentation of facts, or in the concealment of facts, from which a defect of title arises, which facts the vendee had no other means of knowing. 2 Swanst. 287. If then the vendor does not know of a defect, or, knowing it, does not conceal it, or if the vendee does know of it, there is no ground of relief. The vendee then must prove three things: 1st. the defect; 2dly, knowledge and suppression by the vendor; 8dly, ignorance on the part of the vendee. And as to the second matter, the scienter is essential, as the case of Bree v. Holbech, Doug. 654. most amply proves. So too in Urmston v. Pate, already quoted, where P. conceiving himself entitled to an estate, though he had no title at all, sold it, reciting the will under which he claimed, and wárranting only against himself and his ancestors, it was decided that the purchaser had no remedy, though it appeared that the will conferred no title, and though the defect was overlooked by mistake, by the vendee’s counsel. These cases shew how strict the rule has been held in England.
Let us see then whether Beale has exhibited any defect in the title here. The proof lies upon him : yet he has produced no evidence to question the existence of the patent of Penell the elder; and the will of Pencil, and the deeds from his son and son in law to Jenlcs, and from Jenlcs to Wood, and from Wood to Beale, are all regular. Moreover, Beale has possession of the identical land he bought; for luckily it was located between two well known tracts, with one of which it interlocked. Further, he is located in number 5. of the 18,000 acre tract, and has enjoyed the possession ever since 1825. lie has never questioned the title of the Pencils, but only demanded that Wood should produce the deeds from PenelVs devisees to Jenlcs. Now those deeds have *678 been duly recorded in Randolph county, and are exhibited in the record. The title then seems to be compíete. But then it is said that the true location of the 18,000 acres is not known; that the Sherwood survey is said to be for 104,000 acres, and it does not appear that it embraces this land. Beale should then have shewn that it did not; for the onus is on him, and in twelve years he might have ascertained it. But in fact the evidence is abundant for our purposes. Sherwood's survey seems to have been for 104,000 acres. Each of the two Pencils then would have 52,000; but all of Joseph PenelVs share, except about 18,000 acres, appears to have been sold by him in his lifetime. This Sherwood tract was probably as familiarly known by the settlers around, as their own farms. The habits and interests of the people of that country bring them into intimate acquaintance with, all the lines and locations around them. From their information, rather than from the patent, the identity of the tract was to be established. But the parties had also a survey of the 104,000 acres, as the plaintiff himself has taken pains to prove. With these means of information, the commissioners who laid off these lots cannot have been mistaken in laying down lot number 5. as part of PenelVs 18,000 acres, and in considering the 18,000 acres as part of the survey patented to Pencil.
But Beale complains that the title is not in severalty. This might indeed be an objection to specific performance of a contract, if it were promptly made; but it can be no reason'for rescinding a contract, after the party has received his deed, and continued for years in undisturbed possession. He has, in point of fact, had possession in severalty. He was content to accept that possession. He was present when the lots were being laid off. He had seen the deeds of Pencil and Meredith. He well knew then that the lands were yet undivided by regular partition, and it is not pretended that *679 Wood ever intimated the contrary. Admit, then, that , . , r . - , . , , this was a deieet; yet was it one oí which lie was aware, and he ought either to have provided against it, or to have ascertained for himself the real state of the affair. Moreover, it is a defect not necessarily vital to the title. He might at any time have compelled a partition; and upon such partition, if it appeared to the court that he was in possession of no more than a fair proportion, his possession under the circumstances would, according to the usual course of the court, have been respected. The lot on which he settled would have been assigned to him, and he would never have been disturbed. But suppose it otherwise ; suppose him evicted: then he would have redress under his covenant of warranty. But surely a court of equity ought not to have granted him relief by rescission of the contract, upon the anticipation of an eviction, which was not only not threatened, but not even remotely probable. Still less should it have continued the injunction after a partition was actually made by the decree of the superiour court. That decree must be taken to be right. Its errors, if there be any, cannot be collaterally examined. It is unreversed and unannulled, and unless it has been set aside since the dissolution, it is now irrevocable.
Upon the whole, I see no ground for relief in this case. I have not thought it necessary to go into the allegations of fraudulent combinations on the part of Jenks and Wood, to sell lands not their own. The question is not whether they have defrauded others, but whether they have defrauded Beale; and of this there is not the slightest evidence. He is in the enjoyment of what he bought, and his title is not questioned, it is but just however to say, that I think there is nothing fraudulent appearing in the transactions of Wood and Jenks. That Jenks should have purchased from Pencil and Meredith for a valuable consideration, and have sold *680 with general warranty, upon a credit, when he knew he had no title, and that Wood, a man to whom insolvency is not imputed, should have done the same thing, is hard of belief; and it becomes utterly incredible, when we find that all their imputed combination and fraud, all their supposed machinery and contrivances of partnerships and agencies, have resulted in no extraordinary profit to themselves, and no loss to their vendee.
I am of opinion to affirm the decree.