# CHARLESTON.

CYRUS G. GOFF *v.* GERTRUDE GOFF.

Submitted May 9, 1916. Decided May 16, 1916.

1. ARBITRATION AND AWARD—*Annulment and Award—Misapprehension of Arbitrators.*

    An award of arbitrators, made under a total misapprehension of the function assigned them by the agreement of submission, is a departure from the submission, justifying annulment thereof by a court of equity. (p. 428).

2. BOUNDARIES—*Arbitration—Submission—Construction—Province of Arbitrators.*

    A submission of a controversy as to the location of division lines between two tracts of land, as determined by the deeds and

any other evidence the arbitrators may deem necessary to enable them to arrive at a just and fair settlement of the controversy, does not authorize them to make a division of the land in dispute in such proportions as they may deem just and fair. (p. 428).

3. SAME—*Arbitration—Agreement for Submission—Construction—Evidence.*

Upon such a submission, the evidence the arbitrators are authorized to consider in addition to the deeds, is such extrinsic evidence only as is consistent with the deeds and aids in the application thereof to their subject matter, and, in cases of conflict, the deeds are controlling. (p. 428).

4. JUDGMENT—*Bar—Dismissal by Agreement.*

Dismissal of a suit agreed, on the motion of the plaintiff and by consent of the fefendant, does not estop the plaintiff from prosecuting another suit respecting the same matter, in the absence of proof of an actual settlement of the controversy by an agreement or of a status which it may be fairly regarded as having been the intention of the parties to maintain by such dismissal. (p. 427).

5. SAME—*Dismissal by Agreement—Estoppel—Subsequent Award.*

Nor will such dismissal, in the absence of such proof, sustain a subsequent award against one of the parties, respecting the subject matter of the suit. (p. 427).

6. BOUNDARIES—*Equity Jurisdiction—Deeds.*

Equity has jurisdiction to locate a boundary line, not determinable otherwise than by the quantity of the land conveyed by the deed. (p. 430).

7. DEEDS—*Descriptive Clause—Construction and Effect—Boundary Line.*

The descriptive clause in a deed, definitely locating all the lines save the last or closing one and saying it shall run from one monument to another ''so as to make'' a definite quantity of land, expresses intention to limit the quantity of land conveyed by the deed to that so specified and makes such quantity a controlling element in the location of such line, even though the result may be to make it a curved or angular one, instead of a straight one between the two points named, as it would be, but for such limitation as to quantity. (p. 432).

8. BOUNDARIES—*Location of Boundary Line—Jurisdiction in Equity.*

In the location of such a line, the parties are governed by considerations of reason, fairness and practicability, and, in the event of their inability to agree upon the location, either may resort to a court of equity for a decree establishing the line. (p. 432).

9.  DEEDS—*Description—Certainty—Boundary Line.*

  Such a call in a deed is not void for uncertainty.  The deed grants the quantity of land specified and provides sufficiently certain means of identification thereof.  (p. 433).

Appeal from Circuit Court, Roane County,

Suit by Cyrus G. Goff against Gertrude Goff.  From decree for defendant, plaintiff appeals.

*Reversed and remanded.*

*Geo. F. Cunningham* and *Pendleton, Mathews & Bell,* for appellant.

*J. W. Martin* and *Wm. Beard,* for appellee.

POFFFENBARGER, JUDGE:

The decree complained of in this cause denied the plaintiff Cyrus G. Goff, the relief he sought by his bill, annullment of an award of arbitrators, fixing a boundary line between his lands and those of the defendant, and establishment of the lines as he claims them to be, and granted the relief sought by the answer in the nature of a cross-bill, enforcement of the award.

The submission was in writing, under seal, and reads as follows: "This 15 day March 1911.  This contract made and entered into by and between Cyrus G. Goff Susan C. Goff his wife of the first part and Gertrude Goff and her husband Henry L. Goff of second part Witnesseth that whereas there is a controversy between said parties as to the line dividing their lands Now the said first parties have this day selected F. F. Daniel and said second parties have selected M. F. Simmons to survey and determine where said dividing lines shall be between the said parties, to take the deeds made by Cyrus G. Goff For Frederick Goff and deed made to Lucy B. Goff by both of said first parties and to go upon the land and survey said dividing lines according to said deeds and any other evidence that said Daniels and Simmons might deem necessary in the matter in order to arrive at a just and fair settlement of said dividing lines and in the event that said Daniels and Simmons fail to agree they are to

select a third party and the decision of two or more said parties shall be final and binding by deeds. It is agreed that should either of said parties fail to comply to the * * * said Daniels and Simmons or the third he is to * * * * of * * * * on demand. Witnesseth our signature and seals. CYRUS G. GOFF (SEAL) SUSAN C. GOFF (SEAL) GERTRUDE GOFF (SEAL) HENRY GOFF (SEAL).''

On May 28, 1900, the plaintiff made two conveyances of portions of his farm, each for one dollar and natural love and affection, one to Lucy B. Goff, wife of his son Henry Goff, and the other to his son Frederick Goff. The tract conveyed by the first of these deeds is described as follows: ''Beginning at a stake in a drain known as the Tom Davis hollow corner of Harrison Hick's heirs, N 64 and ½ N to a stake corner of Floyd Hildreth N 23 W 40 poles to a sugar on bank of Little Spring creek thence down Little Creek S 17 W 26 poles S 87 W 18 N 7 W 32 S 77 W 50 to a stake in East bank of Little Spring creek N 38 W 22 poles, N 9 E 20 to a beech corner of W. H. Hildreth and M. F. Simmons South 71 West 25 poles to two large sycamores at the mouth of Little Creek thence up Spring Creek South 28 poles S 38 W 36 poles to a beech South 48 West 44 poles to an elm, South 22 West 19 poles to a gum on the east bank of Spring Creek, thence S East to a gate post on the hill in the Peach Orchard thence to the beginning corner so as to make 100 acres *acres,* more or less, to the place of beginning containing 100 acres.'' The other is described thus: ''Beginning at a walnut corner to Ben Goff thence up Main Spring creek to an elm corner of Evert Greathouse, Thence leaving the creek crossing the road to a Buckeye corner of Evert Greathouse; thence with Evert Greathouse's line to a Buckeye another corner of said Greathouse and thence with a line of Greathouse and Marion Walker to a poplar corner to Marion Walker; thence with Marion Walker line to John B. Goff and with Goff's line to a stake corner to Harrison Hicks est. and with a line of said estate to a stake and thence with another line of Estate to a beech corner to Henry Goff thence with Henry Goff line to the gate in the peach orchard on the

hill thence to the place of beginning to be run so as to make 100 acres."

Not long after these conveyances were made, controversies arose among the parties and particularly between Lucy B. Goff and Frederick Goff. The latter brought a suit in equity against the former in 1904, praying establishment of the division line between their tracts. As he was absent at the time, his father, as his agent, caused the suit to be instituted and verified the bill. The claim set up in the bill was that the last line called for in the defendant's deed and the last but one in the plaintiff's deed should be so established as to limit the defendant's tract to 100 acres. Later, an amended bill in which the father joined as plaintiff, was filed, seeking the same relief and praying reformation of the Lucy B. Goff deed as to the description of that line, on the ground of mistake in the expression of the deed, if it was not susceptible of the interpretation contended for. On January 1, 1906, the following order was entered in that cause: "On motion of the plaintiff's and by consent of the defendants this cause is dismissed agreed." As to the terms of the supposed agreement on which the dismisal took place there is no evidence. It is suggested in argument that the basis of the compromise was an agreement on the part of Frederick Goff to convey his land to Lucy B. Goff, since such conveyance was made by a deed dated, July 1, 1910, but there is no proof that it was. Cyrus G. Goff says he thought the controversy was settled in his favor, but that it broke out again "like fire" after the dismissal of the suit. Mrs. Goff says she supposed it was settled in her favor, but admits she was in error as to that. Nor does it appear that the respective holdings of the parties were then clearly defined by any division fences or possession, so as to warrant the view that the dismissal may be regarded as an agreement upon lines then so established. On the contrary, it seems that they were not. When the suit was instituted Frederick Goff was absent and evidently not personally in possession of his land. His father instituted, managed and dismissed the suit. Whether his motive was to restrain his two grants to 200 acres for conservation of his residue, or merely to restrain the grant to the daughter-in-law to 100

acres, is not clear, but he seems to have been the active party in the suit. And these circumstances clearly indicate lack of any definition of the holdings by possession at the date of the dismissal.

As the record of that suit is not shown to have been put into the hands of the arbitrators, and a fair inference from the evidence as to what they had before them, is that it was not in their hands nor in any way considered, no relevancy to the subject matter of this suit is perceived in it. Enough has been stated to show that it is not an adjudication determining the rights of the parties without regard to the award and it was not relied upon in the arbitration.

The award complained of gives Lucy B. Goff about 240 acres in the two tracts conveyed as containing 100 acres each. Notwithstanding one of the calls in her deed is for a line from a gum to a gate post on the hill in a peach orchard, without the addition of any words indicative of intention to vary it in any way from a straight line. the award put two angles in it, and gives her three or four acres beyond what a straight line would take, provided it is located as the plaintiff claims it. The last line in her deed, if run straight from the gate post to the beginning corner at the beech, will include about 14 acres in excess of the quantity called for in her deed and this is unavoidable otherwise than by the making of an angular or curved line. The award makes it straight. This having been done, the adjoining Frederick Goff tract contains about 125 acres, if the division line between it and the Lucy B. Goff tract and its last line are both made straight.

The plaintiff's contention is that the terms of the submission made the deeds binding upon the arbitrators and limited their powers and that the descriptions therein, legally construed, must be so applied as to limit the quantity of each of the two tracts to 100 acres, by making the last line of the Lucy B. Goff tract, the division line between it and the Frederick Goff tract angular or curved and by varying the last line of the Frederick Goff tract in like manner so as to limit the quantity in each case.

The terms of the submission disclose clear intent to make the deeds controlling. The arbitrators were required "to

take the deeds   *   *   *   and to go upon the land and survey
said dividing lines according to said deeds and any other evi-
dence'' they ''might deem necessary in the matter in order to
arrive at a just and fair settlement of said dividing lines.''
The authority to consider other evidence in connection with
the deeds cannot reasonably be construed as authority to
contradict or overthrow the legal effect of those instruments.
The extrinsic evidence contemplated must necessarily have
been evidence consistent with the terms of the deeds and
subordinate thereto in any instance of conflict.   It cannot be
assumed that either party intended to abate any right or
title conferred by an instrument of so high a dignity as a
deed and pertaining to property of such legal dignity as
land, the title to which can pass only by deed, will or de-
scent.   As in the case of other written instruments, each
part of the submission must have such effect as is ordinarily
accorded the terms used in them, and parol evidence is never
allowed to contradict or vary the terms of a deed.   Its usual
function in the settlement of controversies arising upon writ-
ten instruments, is to apply the words thereof to the subject
matter and to afford light by which to determine the mean-
ing of ambiguous or uncertain terms.   The true construction
of the submission, therefore, is that the plain terms of the
deeds were binding upon the arbitrators and that they could
only consider such extrinsic evidence or facts as they might
deem necessary to enable them to identify or locate the lines
and corners called for in the deeds.

Their departure from the submission, thus interpreted, is
manifest.   They went upon the land and, after having heard
the statements of the parties, disclosing the nature and extent
of the dispute, they proceeded to do what they considered
equitable and just under all the circumstances, as if they
had been selected to make a partition of the lands.   One of
the arbitrators said in his testimony ''We concluded from the
appearance of it that there was probably too much land in
the Frederick Goff pieces and saw that Mr. Goff hadn't so
much land and gave it to them.   If any should have any fav-
ors it should be him.   And we tried to adjust it so that it
would leave the lands in good shape, plenty fence and water,

the best we knew how.'' Again, he said: ''In my recollection the 17 acres we concluded was about the subject in dispute or argument and Mr. Daniels concluded or had given Mrs. Gertrude Goff three acres and the rest to Mr. Goff, so to say, we run our lines, that is the part between Lucy B. Goff, and Cyrus Goff, and over to where Henry Goff claims.'' The testimony of the other arbitrator, as to what was done, is less definite as to the basis of their procedure, but does not, in any way, contradict the evidence quoted from his associate. They made no effort to ascertain the acreage of either the Lucy B. Goff tract or the Frederick Goff tract. They are uncertain as to whether the last line of the Lucy B. Goff tract was run and, if they did run it, they did so only to locate the corner designated a gate post. Evidently, the only dispute they recognized was the one along the line from the gum to the gate post, and, in attempting to settle that, they made a broken line with three intermediate corners, in utter disregard of the call in the deed. Their province was not to settle the dispute upon purely equitable lines, nor to effect what they deemd a just and fair division of the disputed territory. The submission required them to settle justly and fairly the ''dividing lines'' according to the deeds, not justly and fairly to divide or allot land in dispute.

For this palpable misapprehension of the function assigned to the arbitrators and their failure to execute the submission according to its true intent and purpose, the award must be set aside and annulled.

There is very limited jurisdiction in equity to settle boundary disputes, but it never exists in the absence of some sort of an equity in favor of the plaintiff against the defendant. If the claim of the plaintiff as to the true interpretation of the deeds involved is well founded, he has made a case of such jurisdiction for the last two division lines have not been located and neither party has absolute authority to make the locations. The issue between them is not one of identity of established lines, but one of establishment. The function to be assumed by the court is analogous to the ascertainment of a line that has become confused and obscured by fraud or the negligence or misconduct of one whose duty it was to pre-

serve it.  It is also similar to specific performance of a contract.  The line is to be created in accordance with stipulations of the deed or conditions prescribed by it.  Under the peculiar circumstances, principles announced in *Hill* v. *Proctor,* 10 W. Va., 59, 77, sustain the jurisdiction.

Ordinarily the quantity specified in a deed conveying land does not express intention as to the boundaries, and is ignored in the determination of the location of lines.  It is merely descriptive, in a general way, of the thing granted, as defined more certainly and definitely by other terms of the instrument.  Ordinarily, too, a call in a deed for a line from one monument to another means a straight line.  But if the deed expressly requires a line or lines to be so run as to include a certain area, without calls for monuments for some of the lines, the direction must be obeyed, for the descriptive matter then expresses intent as to the character and extent of the grant and is not merely descriptive of the subject matter as otherwise defined.  *Crogan* v. *Nelson,* 3 How. U. S. 187; *Moore* v. *Jackson,* 4 Wend. (N. Y.) 58; *Patterson* v. *Trask,* 30 Me. 28; *Richards* v. *Mercer,* 1 Leigh 125.

The rule requiring a call for a line from one designated monument to another, without more, rests upon a presumption as to the intention of the parties and is not a merely arbitrary one.  If a different intention is indicated by the addition of other words, it does not apply.  Judge Allen expressed the true rule in *Marlow* v. *Bell,* 13 Gratt. 527, 530, in these terms: "It is not controverted in argument, that where notorious land marks, as corner trees or natural objects, are called for, they are to be regarded as termini, and a straight line is to be run from one terminus to the other, without respect to course or distance.  *  *  *  But though this be the true rule where no other call is found in the grant but the call to run from one terminus to the other, there certainly may be other calls which show the line was not intended to be a straight line; as where a call is to run with a river or a public road from one terminus to another, the stream or road, if it leads to the other terminus, must be followed, though it may diverge from a direct line between the two points.  The same rule would apply to a marked line, if there

was enough to show that such line, though not a direct line, was intended as the boundary; provided by following the marked line the other terminus can be reached.'' For other authorities to the same effect, see *Winding Gulf etc. Co.* v. *Campbell,* 72 W. Va. 449, 467.

Like all other rules of interpretation, this one has for its purpose ascertainment and enforcement of the intention of the parties. In that sense only, is it a rule of law. Its purpose is not to say how men shall contract, but merely to ascertain what their contracts, as made by them, mean. The two calls in these deeds saying lines shall be run from point to point ''so as to make 100 acres,'' express intention as to the extent and character of the thing granted, and their purposes may be accomplished, and the intention expressed by them effectuated, by deflection of the lines to curves or angles between the points named. The calls for quantity are not in terms descriptive of the land conveyed. They direct unlocat- ed lines to be so located between the points mentioned as to accomplish a certain purpose. If a crooked line between the points is necessary to the effectuation of that purpose and will accomplish it, it must be made, else the intention of the parties will be defeated. The calls for quantity here are as strongly expressive of intent to depart from straight lines, if necessary to achieve the expressed purposes, as if they had been from point to point, following a road, stream or marked line. Even calls for lines and corners will be rejected in obedience to a call for quantity, as having been inserted by mistake, when the intention clearly expressed in the deed cannot otherwise be made effective. *Croghan* v. *Nelson,* 3 How. U. S. 187.

The difficulty of locating the lines in such manner as is suggested here is not insuperable. It is physically possible to run them so as to make only one or many curves or angles, but it is wholly unnecesary to run them in an unreasonable way. Determination of what is reasonable is within the judicial power, and, if the parties cannot agree, the court may exercise that power, upon information ascertained through commissioners appointed for the purpose or in any other recognized way.

Nor does this difficulty render the calls void for uncertainty. As to the land included in them, when fixed, the deeds effect grants thereof, not mere contracts and have requisite certainty. *Richards* v. *Mercer,* 1 Leigh 125.

The pivotal point in the descriptions is the gate post in the peach orchard. It seems there was no such post when the deeds were executed, but that the grantor afterwards put one there in conformity with an intention previously formed. If he did, that post is obviously the one contemplated by the deeds. If he did not, the point contemplated by them is one in the peach orchard to be located as nearly in accordance with the grantor's intention as may be practicable. It cannot be outside of the orchard.

Our conclusion is to reverse the decree complained of, set aside the award exhibited with the bill and remand the cause for a decree establishing the lines of the two deeds mentioned and described in the bill and proceedings, in accordance with the construction here put upon said deeds, after ascertainment of the locations thereof, under the principles and conclusions here stated.

*Reversed and remanded.*