# CHARLESTON.

RALEIGH COAL & COKE CO. v. L. E. MANKIN.

Submitted October 8, 1918.    Decided October 30, 1918.

1. ARBITRATION AND AWARD—*Specific Performance of Award—Setting Aside Award—Unfairness.*

   On an answer to a bill in equity seeking specific performance of an award, supported by proof of gross unfairness and injustice in the result as well as circumstances indicative of partiality and palpable neglect of duty on the part of the arbitrators, the award may be set aside.  (p. 57).

2. SAME—*Submission—Departure—Effect.*

   A submission authorizing arbitrators to award to one of the parties thereto standing and lying timber of the other equal in value to other timber of the former, wrongfully cut by the latter, requires a careful estimation of the quantity of the timber to be compensated for and of the timber to be allotted by way of compensation, and neglect to make such estimates, as the basis of the award, amounts to a fatal departure from the submission, justifying annulment of the award.  (p. 57).

3. SAME—*Vacation of Award—Recommittal of Controversy.*

   On setting aside an award made under a submission *in pais,* the court cannot properly recommit the controversy to the same or any other arbitrators.  (p. 57).

4. INJUNCTION—*Grounds—Vacation.*

   An injunction based solely on the apparent equity given by an award should be dissolved on the setting aside of the award.  (p. 58).

5. MINES AND MINERALS—*Mining Lease—Cutting of Timber.*

Under a clause in a mining lease, granting the lessee right to cut and use timber on the leased land of a specified size, as it may be needed in mining operations contemplated, and reserving to the lessor right to cut and remove the larger timber, the prescription of the size of the timber the lessee may take applies and is determinative of his right to cut and use timber, as of the dates on which such cutting and use become necessary in the process of mining, and he is not entitled to take timber of larger size by reason of growth between the date of the lease and the date of necessity for cutting. (p. 58).

Appeal from Circuit Court, Raleigh County.

Bill in equity by the Raleigh Coal & Coke Company against L. E. Mankin for specific performance of an award. From the overruling of his motions to dissolve an injunction awarded in the cause, and from the failure to dismiss the bill, defendant appeals; and from the setting aside of the award, and a denial of the relief sought by the bill, plaintiff assigns cross-error.

*Reversed in part. Injunction dissolved. Affirmed in part.*

*A. P. Farley* and *John M. Anderson,* for appellant.
*McGinnis & Hatcher,* for appellee.

POFFENBARGER, PRESIDENT:

Having successfully resisted the plaintiff's bill for enforcement of an award of arbitrators and obtained the setting aside of the ward, the defendant complains of the overruling of his repeated motions to dissolve an injunction awarded in the cause, inhibiting him from cutting certain timber, and the failure of the court to dismiss the bill. Cross-assigning error, the plaintiff complains of the setting aside of the award, the requirement of a new award by the same arbitrators and denial of the relief sought by the bill.

The subject matter of the controversy is the value of timber of the plaintiff wrongfully cut by the defendant, for which the latter agreed to make compensation, by a conveyance of other timber of equal value, to be defined by estimators or arbitrators. The parties owned different classes of

timber standing on the same tract of land. Under its lease from the Beaver Coal Company, dated, October 16, 1899, the plaintiff had right to take and use for mining purposes on the leased land, so much of the timber thereon, with certain exceptions, not over twenty inches in diameter one foot from the ground, as should be required for such purposes. By some means not disclosed by the record, the Raleigh Lumber Co. seems to have become the owner of all the other timber on certain land embraced by the plaintiff's mining lease. By an agreement dated, February 2, 1915, said last named company granted to the defendant the right to take, cut manufacture and use "all the merchantable timber twenty (20) inches and over in diameter, bark included, measured one foot from the ground," on a boundary of land known as tract No. 100 and also as the Ruff and Nichol tract. The subject matter of this grant is further described as follows: "The said timber embraced in the contract is all of the Virgin Territory upon said tract No. 100 and the said Virgin territory is situate entirely on the slope of Piney River and Little White Stick Creek." In the exercise of the right so granted to him, Mankin cut a considerable amount of timber, by mistake, that belonged to the plaintiff and that he had no right to cut. He estimates it at 45,844 feet, but the plaintiff claims it amounts to 262,806 feet. It also claims he cut 100,-000 feet of its timber on land lying beyond the boundaries of his deed. Admitting liability and being willing to make compensation in timber, he entered into a written agreement with the plaintiff providing for an estimate of the amount of timber to be conveyed by him, as compensation for what he had wrongfully cut, to be made by H. H. Harwood, selected by himself, and M. H. Morrison, selected by the plaintiff, and binding himself to convey it as laid off by them, out of his timber on "the upper end of Tract No. 100 next to Whorley." The timber so to be laid off and conveyed was to be "an amount of standing and lying timber equal in value to the timber of said Raleigh Coal & Coke Company so cut by the said Mankin."

Within ten days from the date of said agreement, Harwood and Morrison, accompanied by J. W. Turner, an agent

of the plaintiff, went upon the land, examined the area cut over, and the uncut timber, marked off on the ground a boundary of timber to be conveyed by Mankin and made up their report or award, without notice to him. The award was dated, March 9, 1917, and, on March 12, 1917, plaintiff's attorneys mailed to the defendant a copy thereof, a copy of the arbitration agreement and a deed prepared in conformity with the award. Denying the fairness and validity of the award he declined to execute said deed, but prepared, executed and tendered another which he claims would have conveyed 120,000 feet of timber, and, that being rejected, tendered, the answer avers, $500.00 in payment of the damages, which the plaintiff declined to accept.

The ground upon which the answer assails the award is alleged improper conduct of the estimators or arbitrators, resulting in an unjust, unreasonable and oppressive award. It charges failure to make a fair estimate of the timber wrongfully cut, to make a fair estimate of the timber awarded by way of compensation, to cruise it, to count the trees and to go over the boundary of timber allotted, and avers that it was determined by a mere guess. Unfairness and injustice in the award are established by overwhelming proof, if the basis of settlement is the character of the timber at the dates of the cutting and the award. There is no pretense or claim that Mankin cut more than 362,806 feet, nor any doubt that the award included as much as 1,250,000 feet. Competent witnesses who have carefully examined it and one of whom actually cruised it, place the amount at not less than 1,750,000. Morrison did not testify in support of the award and Harwood's testimony proves they arrived at their conclusion by a mere rough acreage estimate. Under that, he estimated the timber awarded would amount to about 660,000 feet. Circumstances tending to prove this disparity in quantity is not altogether innocent or merely accidental, are disclosed. They went upon the ground and did their work without notice to Mankin and in company with the plaintiff's timber agent and spent four days in arriving at a conclusion based upon a general observation of the land and timber and a plat with reference to which they estimated

the acreage. Besides, they took no notice of the difference
in value between merchantable saw-timber and saplings suit-
able for mine props, or, if they did, they made no allowance
for it. The agreement under which they acted required them
to give an equal value in standing and lying timber, and this
they evidently made no effort to do. They neither counted
the trees, nor estimated the quantity of timber in them.
There was a manifest departure in procedure and result,
from the terms of the submission, and that vitiates the
award. *Goff* v. *Goff,* 78 W. Va., 423; *Parr* v. *Howell,* 74 W.
Va. 413; *Berry* v. *Masonic Temple Assin.,* 80 W. Va. 342.

In an effort to overcome the objection of disparity in quan-
tity between the timber cut and the amount allotted by way
of compensation, the plaintiff claims the benefit of growth in
the timber between the date of its lease and the dates of the
cutting and award, a period of about seventeen years; but
this claim is utterly untenable, for its lease did not purport
to vest title to any timber in it as of that date. It conferred
a mere right to cut and use such timber not over twenty
inches in diameter, as it should need in the progress of its
mining operations. Nothing but necessity for such use jus-
tified its taking of any of the timber, wherefore the size of the
timber to be so taken was determinable as of the dates of
necessity for its use. Any other construction of that clause
of the lease would be an absurdity on its face. Plaintiff
made no absolute purchase of timber. What it took was a
mere right to cut and use timber, as needed, nothing more
than a license to be exercised in the pursuit and progress
of its mining right. The terms of the grant are prospective,
saying the lessee may at all times take for its use, so much
timber, subject to certain limitations, as may be required
for specific purposes. At the same time, the lessor reserved
right ''at all times during the operation'' of the lease, to
cut and remove timber not thereby specifically granted to the
lessee. None was specifically granted. The grant was one
of mere license to cut and use certain classes of timber, for
specified purposes.

After having set the award aside, the court could not re-
commit the controversy to the arbitrators, nor order a new

award. In some jurisdictions, this may be done in the case of an award made under a rule of court. Morse, Arb. & Award, pp. 333-335; 5 C. J. 208; *Henley* v. *Menefee,* 10 W. Va. 771. For what purposes and to what extent, need not be ascertained now. It cannot be done, in the absence of a statute authorizing such procedure, in the case of a submission and award *in pais,* such as the one here involved. 5 C. J. 207 citing numerous authorities; *Mills* v. *Master etc. Society of Bowyers,* 3 Kay & J. 66.

The only right the plaintiff had respecting the timber the cutting of which was enjoined stood on the award. Mere right of recovery of damages for wrongful cutting conferred no right to enjoin Mankin from cutting his own timber. The apparent right in equity to have a conveyance of some of his timber, shown by the award, was the sole basis of the injunction, and, when the award was set aside, the plaintiff's equity in Mankins' timber ended, wherefore the injunction should have been dissolved.

These conclusions dispose of the subjects of the cross-assignments of error, and there is no occasion for further discussion thereof.

In as much as the question of the validity of the award has been determined upon the pleadings and proof, the bill should not be dismissed, and the award left in force, by reason of such dismissal, to become the basis of further litigation. The right respecting it has been fairly heard and properly determined. In so far as the decrees complained of overruled the motions to dissolve the injunction and recommitted the controversy between the parties to the arbitrators named in the agreement of submission, they will be reversed, and in the other respects affirmed; but without prejudice to the right of the plaintiff to assert in a proper manner its claim against the defendant for damages for wrongful cutting of its timber; and it will be further decreed here that the plaintiff pay to the defendant his costs in the court below as well as his costs in this court.

*Reversed in part. Injunction dissolved. Affirmed in part.*