# Richmond.

## BRADLEY v. VIRGINIA RAILWAY AND POWER COMPANY.

### January 13, 1916.

### Absent, Cardwell, J.

1. DEEDS — *Construction — Reservations — Exceptions — Family Burial Ground—Intention—Case in Judgment.*—The character of the right intended to be created in a vendor who sells land "reserving the family burying ground * * * with the right of free ingress and egress to and from the same" is not to be determined by the particular terms used in the conveyance, for the words "reserving" and "excepting" are used almost interchangeably, but by the intention of the parties as it appears from the deed and the surrounding circumstances. In the case in judgment, the above reservation was made in a deed conveying a tract of six hundred acres of land, and the intention was, not to except the burying ground from the grant, but to reserve it for burial purposes of the family and none other, and it could not be thereafter sold by the grantor or those claiming under him for commercial and business purposes.

2. DEEDS—*Construction—Against Grantor—Reservations—Restrictions.*— If there is any doubt or uncertainty as to the meaning of the language used by the grantor in a deed, the doubt must be solved in favor of the grantee. This is especially true with reference to reservations or restrictions in a deed whereby there is a withholding of something from the grant.

Appeal from a decree of the Circuit Court of Chesterfield county. Decree for the defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*W. P. DeSaussure* and *E. P. Cox,* for the appellant.

*T. Justin Moore, A. B. Guigon* and *H. W. Anderson,* for the appellee.

HARRISON, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Chesterfield county, dismissing a bill of complaint filed by the appellant asking for an injunction and other relief against the appellee.

The salient facts of the case are that the appellee is the owner of a tract of land containing about one hundred and six acres, known as "Forest Hill Park," which is now situated within the corporate limits of the city of Richmond. This land is part of a tract of about six hundred acres, formerly owned by Charles H. Rhodes, in Chesterfield county, which was by him conveyed to R. D. Mitchell by deed dated February 27, 1862. By successive conveyances title to the park tract became vested in the appellee. At the time of the conveyance to Mitchell, an uncle of Charles H. Rhodes, from whom he had derived the six hundred acres of land, was buried thereon at a point a short distance from the dwelling house. In the deed from Charles H. Rhodes to R. D. Mitchell in 1862, he makes the following reservation: "But reserving the family burying ground and also the servant's burying ground, each to contain one-eighth of an acre with the right of free ingress and egress to and from the same." In 1867 Charles H. Rhodes died and was also buried in this one-quarter of an acre of land near the grave of his uncle. So far as appears, no other interment than the two mentioned, either white or colored, was ever made in this lot. When the predecessors in title of the appellee acquired the land now devoted to the purposes of a park by the present owner, the burying ground, with its two occupants, was located near the center of the park and there remained undisturbed until 1913, when Mrs. Kerr, the widow of Charles H. Rhodes, who is the last survivor of the Rhodes family, with the consent of the appellee, had them removed and reinterred in a cemetery, and in August thereafter conveyed the one-fourth acre lot in the park to the appellant for five dollars and other valuable considerations. In

this deed it is recited that all of the bodies had been removed, and a release was thereby given the appellant from any obligation to use the land for burial purposes for Mrs. Kerr, or otherwise. Very soon after his purchase appellant, without the knowledge or consent of the appellee, had the one-fourth acre lot surveyed, and agreed with one Val Stein to erect a building on the lot for business purposes at a rental of $1,200 a year. He was about to bring materials on the lot for the erection of the building when interfered with and prevented by the appellee. He then filed the present bill, asking for an injunction restraining the appellee from further interference, and demanding a right of way of necessity across the park to this lot, which, as already seen, was denied by the circuit court and the bill dismissed.

The appellee does not deny the right of the family, if any, of Charles H. Rhodes to use this one-fourth acre lot as a burial ground, but it does deny the right contended for by appellant to use the same for commercial and business purposes, together with the right of ingress and egress thereto over its park.

The clause of the deed from Charles H. Rhodes and wife to R. D. Mitchell of February 27, 1862, upon which the claim of the appellant is based, is as follows: "But reserving the family burying ground, and also the servants' burying ground, each to contain one-eighth of an acre, with the right of free ingress and egress to and from the same." The two parcels of land mentioned of one-eighth of an acre each lay together and constituted as a whole the one-fourth of an acre in controversy. The contention of the appellant is that the language relied on constitutes an exception of the one-fourth of an acre from the grant of a *fee simple* title thereto in the grantor which has become vested in him by purchase; whereas, the appellee insists that the language used is the mere reservation of a right to the use of the land as a burying ground for the Rhodes family, with the right of ingress and egress thereto for such purposes.

It is true that the use of the word "reserving" in the deed,

rather than the word "excepting" does not necessarily determine the legal effect of the deed to be a reservation and not an exception. Devlin on Real Estate, vol. 3 (3d Ed.), sec. 980; Minor on Real Property, sec. 101, p. 122. The learned author last cited, after reviewing the distinction between the two terms, says: "But in the United States very generally the logical and historical significance of these terms has been lost sight of, and they are used almost interchangeably, or, rather, the courts, without regard to the particular terms used in the conveyances, construe the language as an exception or reservation, according to the character of right intended to be created thereby—as a reservation, if the right should properly arise by a reservation, and as an exception, if that be the proper means of creating the right intended."

The question before us, therefore, is not whether the word "excepting" or the word "reserving" was used, but whether the character of the right intended to be created in the grantors was such as would properly arise by reservation, or whether it necessarily arises by an exception of the one-fourth of an acre of land as such. In determining this question we must look to the intention of the parties as it appears from the deed and the surrounding circumstances. Whether construing a deed or will, the object is to discover the intention, which is to be gathered in every case from the general purpose and scope of the instrument, in the light of the surrounding circumstances. *Stace* v. *Bumgardner,* 89 Va. 418, 16 S. E. 252; *Lindsey* v. *Echols,* 99 Va. 668, 40 S. E. 23; *Schroeder* v. *Woodward,* 116 Va. 506, 82 S. E. 192.

Looking to the circumstances surrounding the parties at the time the reservation was made, we find that Charles H. Rhodes was selling his large farm. He was married but had no children. His uncle, Holden Rhodes, who had given him the farm, had died and was buried on the same. He naturally desired to reserve the use of a small piece of the land, which included his uncle's grave, for his family burying ground and for his serv-

ants' burying ground, and, therefore, the parties agreed that the grantors should have such a right and stipulated that each parcel should contain one-eighth of an acre. In view of the object the grantor desired to accomplish by the reservation, as shown by the clause under consideration, which was to secure a burial ground with the right of ingress and egress thereto, the parties could not reasonably have contemplated that the grantor was to hold a *fee simple* title, by exception, to the one-fourth of an acre in the midst of this large farm. Nor is it reasonable to suppose that one about to purchase would have taken the land upon such terms.

In *Brown* v. *Anderson*, 88 Ky. 577, 11 S. W. 607, a similar case to this, the language of the grant was as follows: "All which land is hereby conveyed to the grantees excepting and reserving one-half acre of land of said tract, being the old family graveyard of the grantor, together with the right of way to said graveyard." In construing this language and ascertaining the intention of the parties, the court said that "it indicated with reasonable certainty the purpose for which the half acre was excepted and the persons for whose benefit it was excepted. And when we consider the size and situation of it inside the boundary of a farm of two hundred acres, and the natural and proper signification of the language, it becomes clear that the parties to the deed intended it to be used for no other purpose than a graveyard, and for the interment of no other class of persons than answer the description of the grantor's family, in the plain meaning of that word. . . . Besides, if the estate of the appellants in the half acre be as they claim absolute, and without considering its use, it follows, of course, they may not only abandon it as a graveyard, still retaining the possession and right of way to it, but sell and convey it to strangers to be used for that or any other purpose, however injurious or offensive to the owner and occupant of the other part of the original tract. Though the fee simple may be in appellants (about which it is not necessary to decide), the par-

ties to the deed had the right to annex a condition of the use and enjoyment by the grantor and his descendants of the estate in the half acre, and that they did intend to limit the use of it and the right of way to it for the sole purpose of a family graveyard, and for the sole benefit of the persons mentioned, we are satisfied, and such being the case, the right to license others to use it is repugnant as well to the language used as to the manifest intention of the parties, and therefore cannot be implied."

It must be remembered, too, that if there is any doubt or uncertainty as to the meaning of the language employed by the grantor, that doubt must be solved in favor of the grantee.

"It is a familiar rule that a deed or grant must be construed most strongly against the grantor. This applies with especial force to a reservation or restriction in a deed whereby there is a withholding of something from the grant." *Klaer* v. *Ridgway,* 86 Pa. 529.

Chancellor Kent says: "Where a deed may enure in different ways, the grantee shall have his election which way to take it. An exception in a deed is always to be taken most favorably for the grantee, and if it be not set down and described with certainty, the grantee shall have the benefit of the defect." *Jackson* v. *Hudson,* 3 Johnson 375.

In *Towns* v. *Brown* (Ky.), 114 S. W. 773, the court says: "An exception in a deed is always to be taken most favorably for the grantee, and if it be not set down and described with certainty the grantee shall have the benefit of the defect. Where there is an attempt to make a reservation in a deed, any uncertainty as to its description or meaning must be solved in favor of the grantee and against the grantor."

Under the facts and circumstances of the present case, and in the light of the authorities cited, we are of opinion that the language, "But reserving the family burying ground and also the servants' burying ground, each to contain one-eighth of an

acre, with the right of free ingress and egress to and from the same," was never intended by the parties to the deed of February 27, 1862, from Charles H. Rhodes to R. D. Mitchell, to create an exception to the grant in favor of the grantor of a *fee simple* title to one-fourth of an acre of ground in the midst of the large farm conveyed, but was merely intended as a reservation of one-fourth of an acre for burial purposes and none other, for the use of the grantor's family. The purpose of the grantor was to secure a spot for the use of his family as a graveyard, with free ingress and egress thereto. This was completely accomplished by the language he employed to express his meaning. It would, we think, be a strained if not unwarranted construction of the language, under the facts and circumstances, to hold that it was intended thereby to carve out of the midst of this estate a quarter of an acre that would pass to the heirs of the grantor after it had been abandoned as a graveyard and all interments had been removed therefrom. This view is conclusive of the case and makes it unnecessary to consider other grounds urged by the appellee in support of the decree of the circuit court.

The decree appealed from must be affirmed.

WHITTLE, J., dissenting:

I am unable to concur in the opinion of the court in this case. In my judgment the decision overturns a long-established and important canon of construction in the law of conveyancing in this Commonwealth, the tendency of which is to create confusion and unsettle titles to real property.

The undisputed facts are that prior to, and at the date of, the deed from Rhodes and wife to Mitchell, the plot of ground in dispute was used as a place of burial; that it "was fenced in, and cedar and other trees were growing on it;" that there was also a dividing fence separating the half of the lot set apart for the interment of members of the family from the servants' half,

and that Mr. Rhodes would not and did not sell the plot. This evidence repels the theory that Rhodes intended to create a new right in the nature of an easement in the grantee in the lot, and, unaided by extraneous evidence, the language of the stipulation quoted in the opinion does not admit of that construction.

The authorities agree that though the distinction between the legal import of the terms *"exception"* and *"reservation"* in conveyancing is well understood, the words are not infrequently used indiscriminately. 2 Devlin on Real Estate (3d Ed.), sec. 980.

Professor Minor in his work on Real Property, observes: "In England the terms 'reservation' and 'exception' are separate and distinct in meaning, the term *'reservation'* being applied to provisions in a conveyance which call for the *return* to the grantor of some profit or issue in future out of the land conveyed, as a part of the future crops grown on the land, or a *money rent,* etc.; . . . while the term *'exception'* applies to those provisions which *except* from the operation of the conveyance certain parts (*already existent*) of the thing conveyed, which without such exception would pass under the general terms of the conveyance. . . . But in the United States very generally, the logical and historical significance of these terms has been lost sight of, and they are used almost interchangeably, or, rather, the courts, without regard to the particular terms used in the conveyance, construe the language as an exception or reservation, according to the character of the right intended to be created thereby—as a 'reservation,' if the right should properly arise by reservation, and as an 'exception' if that be the proper means of creating the right intended." See authorities cited in n. 3.

The rule and distinction are clearly stated in 2 Devlin on Real Estate, secs. 979, 980. So, also, Bouvier's Law Dictionary defines "exception" as "The exclusion of something from the effect or operation of the deed or contract which would

otherwise be included." On the other hand, "reservation" is defined as "That part of a deed or instrument which reserves a thing not *in esse* at the time of the grant, but newly created."

These authorities lead to the conclusion that the language of the clause, upon the correct interpretation of which this case rests, creates an *exception* and not a *reservation,* and vests no interest, present or future, in the lot in controversy in Mitchell and those claiming under him.

*Affirmed.*