332 S.E.2d 597

**SALLY-MIKE PROPERTIES,
a Partnership**

v.

**Woodrow YOKUM, et al.**

**No. 16407.**

Supreme Court of Appeals of
West Virginia.

July 3, 1985.

Richard W. Cardot, Elkins, for appellants.

Brown, Harner & Busch and Richard H. Talbott, Jr., Elkins, for appellee.

McGRAW, Justice:

This is an appeal from the Circuit Court of Randolph County involving a petition filed by the appellee, Sally-Mike Properties, a partnership, seeking authority for removal, transfer and reinterment of certain grave markers and human remains contained in a private burial ground located upon property claimed by the appellee.

The appellant, Woodrow Yokum, as one of the descendants of persons interred in the private cemetery, responded to the petition below, objecting to the proposed removal and transfer, and further asserting that the appellee did not own the property comprising the burial ground. The circuit court, in an order dated May 2, 1984, concluded that the appellee did own the subject property. Thereafter, the circuit court considered the issue of the propriety of removal and reinterment of the remains located in the burial ground. By a second order, entered June 4, 1984, the circuit court granted the appellee's request for authority to remove and transfer the remains. Upon the motion of the appellant, the circuit court granted a stay of execution of its final order pending application for appeal. Subsequently, this Court granted the appellant's petition for appeal, and further ordered a stay of execution of the orders below until the final decision of this Court. Based upon the findings and conclusions which follow, we reverse the decision of the circuit court.

The appellee, Sally-Mike Properties, purchased approximately five acres of real estate south of the city of Elkins, Randolph County, by deed dated December 3, 1982. The burial ground which is the subject of dispute in this appeal is surrounded on three sides by the appellee's property, with the fourth side adjoining a four-lane highway (U.S. Routes 219 & 250). As a result of excavation activities during the construction of the four-lane highway, and excavation done by former owners of the property purchased by the appellee, the burial ground is presently situated upon a well-defined knoll with an elevation ranging from twelve to twenty feet above the surrounding property.

The appellee purchased the property surrounding the burial ground with the intention of developing a commercial site. After unsuccessful attempts to market the property as two separate tracts, one on each side of the burial ground, the appellee received an offer for the development of the tract as one unit, conditioned upon removal of the burial ground and the knoll upon which it sets. Subsequently, the appellee

filed its petition with the circuit court seeking authorization for removal of the remains interred within the burial ground and transfer to another cemetery within the county.

The petition was filed pursuant to the act codified at West Virginia Code § 37–13–1 et seq. (1985 Replacement Vol.). This act sets out a petition, notice and hearing procedure whereby the circuit court of the county where the subject property is located may "permit and order the removal, transfer and reinternment, or other disposition, of remains in any graves located upon privately owned land...." West Virginia Code § 37–13–1 (1985 Replacement Vol.). This statutory remedy, however, may be sought only by the actual owner of the property upon which the graves are situated. West Virginia Code §§ 37–13–1 & –2 (1985 Replacement Vol.). Consequently, the threshold question below, and the primary issue in this appeal, is whether the appellee owns the land where the burial ground is located.

The burial ground in question was established sometime prior to 1891, on what is referred to in the record as the "old Sarah Yokum farm." By deed dated January 17, 1891, James Shoemaker, Sarah A. Yokum and J.E. McCarty conveyed a tract containing approximately 52 acres to Stephen B. Elkins. Although now bordering on a four-lane highway, at the time of this conveyance the burial ground was situated within the interior of the tract conveyed, a short distance from the modern highway's predecessor, the old Beverly and Fairmont Turnpike. The 1891 deed, after the description of the tract being conveyed, contains the following language:

> But of the land included in said boundary lines, one fourth acre thereof lying on top of the cleared point South of the old Yokum house and West of the said pike, to be laid off so as to include all of the burial ground now on said point, is reserved from the operation of this conveyance.

Twelve years later, by deed dated March 25, 1903, Stephen B. Elkins conveyed a 23-acre parcel of the "old Yokum farm" to the newly formed Board of Trustees of the Davis and Elkins College. From 1904 to 1924 the land surrounding the burial ground was part of the first campus of Davis and Elkins College. In the mid-1940's, two decades after the college's relocation, the former campus was sold by the trustees. Shortly thereafter, a major portion of the former campus was surveyed and subdivided into residential lots. A plat map made in conjunction with this survey shows the burial ground with specific boundary dimensions which approach one-third of an acre in area.

According to the petition, and other evidence adduced below, the number of persons from the Yokum family and others believed to be interred in the burial ground is somewhere between eight and seventeen. Additionally, there was testimony below that seven or eight confederate soldiers, names unknown, were buried there during the war. The last person known to be buried at this site was Sarah Yokum, a grantor in the 1891 deed, who died on November 4, 1911.

The appellee's claim of ownership of the burial ground, and thereby the right to petition for removal and transfer of the remains, rested upon two arguments relating to the above-quoted language concerning the burial ground contained in the 1891 deed. First, the appellee asserted below that the grantors in the 1891 deed intended merely to create a right to use and maintain the burial ground on the property, and did not intend to retain fee title to the one-fourth acre. Alternatively, the appellee argued that, even if the 1891 grantors did intend to retain title to the burial ground, the description contained to the deed is so vague and uncertain that the attempted exception is void. The circuit court appears to have found both of the appellee's positions equally persuasive and, accordingly, concluded as a matter of law that, based upon either, the appellee owned the burial ground property. These alternative holdings by the circuit court are the appellant's main assignments of error, and in light of our conclusions which follow, are the only questions we need address.

## I

We first address the question of the import of the language used in the 1891 deed in reference to the burial ground. The function of the Court when presented with such a question is "to ascertain the true intent of the parties as expressed by them in the deed, lease or other written instrument under consideration." *Davis v. Hardman,* 148 W.Va. 82, 88–89, 133 S.E.2d 77, 81 (1963). In this regard, the manifest intent of the parties supersedes the commonly ignored technical differences between a "reservation" and an "exception." *See Freeport Coal Company v. Valley Point Mining Company,* 141 W.Va. 397, 401, 90 S.E.2d 296, 299 (1955). It has long been recognized that, "It makes no difference whether the word used is 'except' or 'reverse,' the intent being the matter to be considered." *Preston v. White,* 57 W.Va. 278, 282–83, 50 S.E. 236, 237–38 (1905); *see also Malamphy v. Potomac Edison Company,* 140 W.Va. 269, 273, 83 S.E.2d 755, 758 (1954); *Tate v. United Fuel Gas Company,* 137 W.Va. 272, 280, 71 S.E.2d 65, 70 (1952); *Erwin v. Bethlehem Steel Corporation,* 134 W.Va. 900, 914–16, 62 S.E.2d 337, 345–46 (1950); Syl. pt. 3, *Collins v. Stalnaker,* 131 W.Va. 543, 48 S.E.2d 430 (1948); Syl. pt. 3, *Beckley Nat'l Exchange Bank v. Lilly,* 116 W.Va. 608, 182 S.E. 767 (1935); Syl. pt. 7, *Freudenberger Oil Company v. Simmons,* 75 W.Va. 337, 83 S.E. 995 (1914).

The appellee maintains that the parties to the 1891 deed intended merely to reserve to the grantors the right to use and maintain the burial plot, and did not intend to retain fee title to the property upon which it is situated. In support of this interpretation, the appellee cites three circumstantial factors. First, at the time of the 1891 deed the burial ground was located within the interior of the tract conveyed. Second, the appellee notes that the grantors did not expressly provide for a right of access to the burial ground.[1] Third, the appellee points to the fact that a portion of the tract, including the land surrounding the burial ground, ultimately became a part of a college campus.[2]

Intention disclosed, if at all, by inference or implication, is not allowed to prevail over a different intention expressed in terms. *See* Syl. pt. 5, *White Flame Coal Company v. Burgess,* 86 W.Va. 16, 102 S.E. 690 (1920). The language of the instrument itself, and not surrounding circumstances, is the first and foremost evidence of the parties intent. Resort to rules of construction and aids to interpretation, including extrinsic evidence, is proper where the language of an instrument is ambiguous and subject to more than one meaning. And in cases involving reservations and exceptions, any remaining doubt as to intent should be resolved in the grantee's favor. However, as this Court has previously held, "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. pt. 1, *Cotiga Development Company v. United Fuel Gas Company,* 147 W.Va. 484, 128 S.E.2d 626 (1962); *see also McDonough Company v. E.I. DuPont DeNemours & Company, Inc.,* 167 W.Va. 611, 280 S.E.2d

---

1. Whether the grantors reserved merely a right to use and maintain the burial plot, or excepted and retained fee title to the property, they would need an easement to the site in *either* instance. Necessary easements in such situations are often implied by law. *See, e.g.,* Syl. pt. 2, *Stuart v. Lake Washington Realty Corporation,* 141 W.Va. 627, 92 S.E.2d 891 (1956); *Miller v. Skaggs,* 79 W.Va. 645, 91 S.E. 536 (1917); Syl. pt. 1, *Bennett v. Booth,* 70 W.Va. 264, 73 S.E. 909 (1912); Syl. pt. 2, *Hoffman v. Shoemaker,* 69 W.Va. 233, 71 S.E. 198 (1911).

2. The appellee asserts in its brief to this Court that this was "a probability which apparently was known to the parties at the time of the conveyance." There is no evidence of record to support this assertion. Moreover, we note that the records show that the 1891 grantee's conveyance of property to the college trustees occurred more than twelve years after the 1891 conveyance, and was a conveyance of only a portion of the property acquired by the grantee in 1891. These facts alone do not support an inference that, in 1891, the parties were "apparently" aware of the probability that the portion of property surrounding the burial ground would later become the first campus of a newly formed private college.

246, 247 (1981); *Davis v. Hardman,* 148 W.Va. 82, 89, 133 S.E.2d 77, 81 (1963); Syl. pt. 4, *Tate v. United Fuel Gas Company, supra;* Syl. pt. 2, *Mace v. Carpenter,* 147 W.Va. 322, 127 S.E.2d 254 (1962).

■ We find no patent ambiguity in the language pertaining to the burial ground; nor do we find any latent ambiguity by virtue of the appellee's explanation as to the circumstances existing at the time of the conveyance. The plain language of the final clause of the 1891 deed clearly denotes the parties intent—"But of the land in included in such boundary lines, one fourth acre ... *is reserved from the operation of this conveyance."* (Emphasis added.) The observations of the Court in *White Flame Coal Company v. Burgess, supra,* are appropriate in this instance:

> An exception by a grantor having title is a mere withholding of title to part of the property described in the deed. Hence, if he declares in the deed that he does not grant or undertake to convey part of such property, he excepts the designated part. The form of an exception is immaterial. It may be effected by the use of any words expressing intention to except. 86 W.Va. at 20–21, 102 S.E. at 692.

In relation to the language in the instant deed, the appellee cites the Virginia case of *Bradley v. Virginia Ry. & Power Company,* 118 Va. 233, 87 S.E. 721 (1916), as support for the proposition that the grantors herein intended only to reserve a right of use in the burial ground. In *Bradley,* the deed conveying a 600-acre farm in 1862 contained the following: "But reserving the family burying ground, and also the servants' burying ground, each to contain one-eighth of an acre, with the right of free ingress and egress to and from the same."

■ The Virginia court found this language ambiguous as to whether the grantor intended a reservation of use or an exception of title. Accordingly, the court considered the particular surrounding circumstances, and, applying the rule of construction that any doubt is normally resolved in favor of the grantee, a majority of the court construed the language as creating a reservation of use for burial purposes for the benefit of the family of the grantor. 118 Va. at 238–39, 87 S.E. at 723. We find no such ambiguity in the terms of the instant deed. Although, as in *Bradley,* "reserving" without further elaboration may create doubt as to intent,[3] reserving from the operation of a conveyance clearly indicates an intent to create an exception of title. Accordingly, we hold that a clause in a deed providing "one fourth acre ... is reserved from the operation of this conveyance," constitutes an exception saving to the grantors, their heirs and assigns, fee title to the land therein described.

## II

The second and corollary issue presented in this appeal is whether the exception in the 1891 deed of one-fourth acre is void due to uncertainty of description. There was no contention by any of the parties or witnesses in the proceedings below that the general location of the burial ground is uncertain. In fact, as a result of the excavation activities upon the immediately surrounding property, the location of the burial ground is apparently more evident now than at any time in the past. Rather, the appellee maintains that the deed's description of its boundaries is so vague and uncertain that the attempted exception from the conveyance is legally insufficient.

■ A deed of conveyance, in order to pass title, must contain a description of the property being conveyed which sufficiently identifies the land, either by the language of the granting clause itself or by reference to extrinsic facts which render the

---

**3.** We note that in another Virginia case, more recent than *Bradley,* the court was presented a clause in a deed providing, "The parties of the first part reserve one half an acre around the graveyard...." The court held "there is no merit in the contention that 'the reservation of one-half acre around the graveyard was not of the fee.' The language clearly imports the retention of the fee...." *Yukon Pocahontas Coal Company v. Ratliff,* 181 Va. 195, 205, 24 S.E.2d 559, 563 (1943). *See also Mannerback v. Pennsylvania Railroad Company,* 16 Pa.Super. 622 (1901).

description certain. *See, e.g. Consolidated Coal Company v. Mineral Coal Company*, 147 W.Va. 130, 126 S.E.2d 194 (1962); *Meadow River Lumber Company v. Smith*, 126 W.Va. 847, 30 S.E.2d 392 (1944); *Jones v. Gibson*, 118 W.Va. 66, 188 S.E. 773 (1936). The same rule applies to exceptions from the granting clause of a deed. As stated in Syllabus point 2 of *Harding v. Jennings*, 68 W.Va. 354, 70 S.E. 1 (1910), "An exception in a deed conveying land must describe the thing excepted with legal certainty, so as to be ascertained, else the thing sought to be excepted will pass to the grantee."

 The appellee's challenge to the validity of the description is directed to the lack of reference to any monuments or courses and distances from which boundaries could be ascertained. In view of the particular character of the property retained and the specific language of this excepting clause, we do not find the omission of express lines of reference to be fatally defective. The clause speaks of facts and circumstances which render the description ascertainable. No part of a deed should be declared void for uncertainty if it is possible, by any reasonable rule of construction, to ascertain from the description, aided by extrinsic evidence, the property intended to be affected. *See* Syl. pt. 5, *Consolidation Coal Company v. Mineral Coal Company, supra; Harper v. Pauley*, 139 W.Va. 17, 81 S.E.2d 728 (1953); *Jones v. Gibson, supra; Foley v. Ruley*, 43 W.Va. 513, 520, 27 S.E. 268, 271 (1897); *Simpkins v. White*, 43 W.Va. 125, 128, 27 S.E. 361, 361–62 (1897); Syl. pt. 3, *Thorn v. Phares*, 35 W.Va. 771, 14 S.E. 399 (1891). As often stated, "that is certain which can be made certain." *Holley's Executor v. Curry*, 58 W.Va. 70, 73, 51 S.E. 135, 136 (1905).

First of all, in the case at hand there is no question that the general location and identity of the land excepted is sufficiently denoted by the description of the burial ground "lying on top of the cleared point South of the old Yokum house and West of the said pike. . . ." By contrast, a clause in a deed which provided, "Excepting also two other small tracts of land not to exceed in all three hundred acres" was held to be void for uncertainty because there was no language in the deed by which the land intended to be excepted could be identified. *See* Syl. pt. 3, *King v. King*, 80 W.Va. 371, 92 S.E. 657 (1917).

 Proceeding with the more narrow question of whether the description is sufficiently certain for a determination of boundaries, the most vital fact of reference in this case is the quantity of land excepted. Typically, general references to quantity, within the context of more specific descriptions of the property, are not held to be a controlling factor as to the area of land conveyed or excepted. *See, e.g. Davis Colliery Company v. Westfall*, 78 W.Va. 735, 90 S.E. 328 (1916). We note also that, "Ordinarily, the quantity specified in a deed conveying land does not express intention as to the boundaries, and is ignored in the determination of the location of lines." *Goff v. Goff*, 78 W.Va. 423, 431, 89 S.E. 9, 11 (1916). However, in this instance, as in the *Goff* case, the property affected is specified to be a precise quantity of land. Otherwise indefinite boundaries may be defined, at least in part, by the named quantity of land, particularly where stated in a specific and fixed amount. *See* Syl. pt. 7, *Goff v. Goff, supra;* Syl. pt. 2, *State v. Hicks*, 76 W.Va. 508, 85 S.E. 665 (1915); Syl. pt. 1, *Carnegie Natural Gas Company v. Carter Oil Company*, 73 W.Va. 776, 81 S.E. 840 (1914); Syl. pt. 6, *Smith v. Owens*, 63 W.Va. 60, 59 S.E. 762 (1907); *see also People v. Call*, 129 Misc. 862, 223 N.Y.S. 257 (1927); *Bynum v. McDowell*, 3 Tenn.App. 340 (1926); *Sansing v. Bricka*, 159 S.W.2d 142 (Tex.Civ.App.1942).

A second fact of reference important to the instant case is that the grantors clearly stipulated that the burial plot itself was to be the controlling point of reference in the determination of the excepted land's boundaries. For this reason and others, we do not view the decision in *Meadow River Lumber Company v. Smith, supra*, in which the Court voided an indefinitely described conveyance, as support for the conclusion that the immediate exception is void

for uncertainty. In *Meadow River*, the attempted conveyance was 100 acres out of the southeastern end a larger tract, to be adjoined on one side by another separate tract. The southeastern end of the larger tract was markedly irregular in shape. Thus, in that instance there was no central or controlling point of reference from which the northern line of the 100 acre tract could be conclusively or constructively ascertained.

In the case at hand, however, we are presented an exception of property of a particular character whereby the controlling point of reference and established rules of construction fix the boundaries with sufficient certainty. We have already discussed one applicable rule of construction. That is, language manifesting an intent to convey or except a specific quantity of land defines, in part, the boundaries of the subject property.

Additionally, we find that another rule of construction removes any remaining cloud of uncertainty from the description involved herein. In cases similar to this one, it has been held that where reference is made to an established landmark as being the object of the exception, such point is to be construed as to common center of the parcel excepted, and the boundaries are thus capable of location by proceeding in equal distances to form a square as near as possible to carry out the intent to encompass both the existing landmark and the requisite quantity of land. For instance, in *Hodge v. Blanton*, 38 Tenn. (1 Head) 560 (1858), the court construed an exception in a deed calling "for a burying ground, two poles square, around the graves where the said William Hodge and his grandchildren are now buried." The court held that proper construction fixed the boundaries of the lot by making the graves the common center from which lines equally extending in four directions established an area of the specified quantity. More recently, in *Honey v. Gambriel*, 303 Ill. 74, 135 N.E. 25 (1922), the Illinois court held that where a deed reserved "one-half acre where the graveyard is now situate," the location of the tract reserved was sufficiently designated so as to enable the determination of

its boundaries with reference to the center of the graveyard and the quantity reserved. *See also In re Frayser's Estate*, 401 Ill. 364, 82 N.E.2d 633 (1948); *Miracle Construction Company v. Miller*, 251 Minn. 320, 87 N.W.2d 665 (1958). Based upon the foregoing principles, and the specific references in the 1891 clause at issue here, we do not find the exception void for uncertainty.

Our conclusion on this question does not establish the actual boundaries of the disputed property. We are only passing upon the question of whether the description involved is of sufficient certainty to retain legal title. In addition to the rules of construction noted above, intervening factors may be relevant to the determination of the actual boundaries. For example, there is evidence of a survey of the plot conducted in the mid-1940's, which, according to testimony of a witness who assisted in the survey, was based upon a fence which had been in existence as long as he had been familiar with the property, since 1927. *See Rhodes Cemetery Ass'n v. Miller*, 122 W.Va. 139, 7 S.E.2d 659 (1940). In *Rhodes*, this Court was presented with the question of whether a conveyance of "the plot of land where my wife Elizabeth Rhodes is now buried with sufficient land surrounding said grave as will constitute one half acre ..." was capable of definite location. Answering in the affirmative, this Court found that, under the doctrine of acquiescence, a plat defining the boundaries of the cemetery made and recorded by the immediately succeeding owners of the surrounding property was binding upon subsequent owners of the same property.

Acquiescence and other intervening issues, such as adverse possession of part of the parcel, may or may not have bearing on a final determination of the boundaries. A determination of the actual boundaries, as well as a determination of the true owners of the burial ground, are not questions presented in this appeal. We find only that the appellee did not establish ownership and, therefore, the orders issued below pursuant to West Virginia Code § 37–13–1 *et*

*seq.* (1985 Replacement Vol.) were improper.

For the foregoing reasons, the orders of the circuit court are reversed.

Reversed.