# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

William M. Turner et al.

v.

Myrtle H. Turner
and Raymond C. Turner

January 29, 1999

Case No. CH98-492

BY JUDGE WILLIAM H. LEDBETTER, JR.

This suit involves a dispute among relatives over a family cemetery.

All of the litigants are descendants or spouses of descendants of a common ancestor, Mordecai Sullivan. The plaintiffs seek a determination that they have the right to visit, maintain, enclose, and be buried in the family cemetery. The defendants, who own the tract on which the cemetery is located, admit that the plaintiffs may have access to the cemetery, upon conditions, for the purposes of paying respect to those interred there and maintaining the graves; but they deny that the plaintiffs have the right to be buried there.

### Facts

In 1897 Mordecai Sullivan conveyed 22 acres of his farm in the Paytes area of Spotsylvania County to his son, William F. Sullivan. The deed contained the following proviso: "that the two acres of the above-described lot is hereby reserved, a part for a burying ground for the family and a part as an outlet ... ."

Everyone agrees that the "burying ground" mentioned in the deed refers to a family cemetery that existed at the time of the conveyance located on the 22-acre parcel conveyed by Mordecai Sullivan to William F. Sullivan, now

owned by the defendants. Everyone also agrees that the cemetery, comprising about an acre, now contains approximately 30 graves, most of which are marked.

In 1935 after the death of William F. Sullivan, all of his children conveyed their interests in the 22-acre parcel to Andrew J. Sullivan, another descendant of Mordecai Sullivan. In that deed, no mention was made of the cemetery or of the reservation of a "burying ground."

Raymond C. Turner, one of the defendants, acquired the property by deed from Andrew J. Sullivan in 1945. Again, no mention was made of the cemetery or of a reservation of land for a "burying ground."

Raymond C. Turner conveyed the property to himself and Myrtle H. Turner, the other defendant, with right of survivorship, in 1960.

### Interpretation of the 1897 Deed

The defendants first contend that the 1897 deed that reserved a "burial ground for the family" should be narrowly construed to refer to the immediate family of the grantee in that deed, William F. Sullivan, not to all the descendants of Mordecai Sullivan. The plaintiffs argue for a broader construction.

The meaning of the word "family" depends on the field of law in which the word is used, the purpose intended to be accomplished by its use, and the facts and circumstances of each case. In its most restricted sense, "family" is used interchangeably with household; i.e., a collective body of related persons living in one dwelling under united management. Perhaps most commonly, the word refers to parents and their children, constituting the fundamental social unit in most civilized societies. More broadly, "family" can mean all descendants of a common progenitor. *Black's Law Dictionary* (6th ed. 1990), p. 604.

The court agrees with the plaintiffs that the word "family" was used in its broader sense in the 1897 deed. Considering the purpose intended to be accomplished and the surrounding facts and circumstances, Mordecai Sullivan could not have intended to reserve a burial ground only for his immediate family or, as suggested by the defendants, William F. Sullivan's immediate family. First, ancestors of Mordecai Sullivan (and, consequently, of William F. Sullivan) were already interred in the cemetery at the time of the conveyance. That circumstance provides evidence that the parties to that deed were not referring to a cemetery only for the immediate family of William F. Sullivan. Second, as the plaintiff points out, it would make no sense for

Mordecai Sullivan to convey 22 acres in fee to his son and at the same time reserve for that son a burial ground. No such reservation would be necessary; in fact, it would be needlessly superfluous. Third, the word "family" is used here in a field where it is often meant to include people beyond the immediate family or household of the person using the word. Fourth, as a matter of common knowledge and human experience, we know that "family cemetery" or "family burial ground" generally refers to a place where several generations of related persons are buried, not just members of one immediate family or household. Finally, insofar as it may be relevant, the conduct of the parties adds strength to the interpretation advanced by the plaintiffs. Since 1897, a number of persons outside the immediate family of William F. Sullivan have been interred there, apparently all of them being descendants of Mordecai Sullivan.

For those reasons, the court construes the 1897 deed to reserve the cemetery area as a burial ground for the descendants of Mordecai Sullivan. That is the sense in which Mordecai Sullivan used the word "family" in his deed to his son.

The parties do not dispute that the defendants are owners in fee of the entire parcel, including the spot on which the graveyard is located. That issue is governed by *Bradley v. Virginia Railway,* 118 Va. 233 (1916), where the court held, under facts similar to these, that the word "reserved" is almost interchangeable with the word "excepted," so that the grantor who "reserves" a family graveyard intends to convey the fee subject to the right of the grantor's family to continuous use of the graveyard as a burying ground. Therefore, for purposes of this case, the word "reserved" in the 1897 deed does not mean that Mordecai Sullivan withheld or reserved for himself and his descendants a fee interest in the cemetery; instead, he excepted from the conveyance a specific right, often described as an incorporeal hereditament, akin to an easement in gross, for his descendants to continue to use the cemetery for family burials.

*Bradley* is instructive on another point. The Court treated without comment the word "family" to mean the grantor's family, not the grantee's family, and to include descendants, not just the family that existed at the time the reservation was made.

### *Effect of the 1935 Deed*

It follows from the conclusion reached in the preceding section that the 1935 deed of the property to Andrew J. Sullivan did not extinguish the earlier

reservation of the family cemetery. Even assuming that by using the English covenants of title the grantors in that deed intended to convey their right to use the cemetery for burial purposes, they could not effectively terminate the burial privileges reserved by Mordecai Sullivan for all his descendants. The children of William F. Sullivan, the grantors in that deed, did not constitute all the descendants of Mordecai Sullivan. Further, some of William F. Sullivan's children who signed that deed were themselves parents of children alive in 1935, and they could not convey the interests of their children in the cemetery even if they had intended to do so. Finally, the court is of the opinion that the language used in the 1935 conveyance was not intended to extinguish the family burial ground located within that parcel. In fact, some of the grantors in the 1935 deed were later buried in the cemetery.

Therefore, the court finds that the reservation was not extinguished by the 1935 deed and survives to this day for the use and benefits of the descendants of Mordecai Sullivan, a class to which all the parties to this suit belong.

### *Extent of Use*

Having determined that the plaintiffs have the right to use the graveyard as a family burial ground, the court must next determine the manner in which that use can be exercised. This issue is significant because the defendants first questioned the plaintiffs' right to use the cemetery only after some of the plaintiffs allegedly abused their right of access to the cemetery by driving recklessly along the outlet road, visiting the grave sites at odd hours without notice, and insisting on bringing surveyors onto the property to mark off the cemetery boundaries.

It goes without saying that the plaintiffs' rights to the cemetery include the right of reasonable access to it, the right to maintain the grave sites, the right to visit to pay respect for those interred there, and the right to be buried there. All of these rights must be exercised reasonably so as not to unduly interfere with the rights of the owner of the fee. It is axiomatic that the holder of rights in another's land may lose those rights, or have them curtailed, by repeated abuses and misconduct.

It would also seem to be proper that the plaintiffs are entitled, at their own expense, to cause the cemetery to be surveyed. The definition of cemetery, graveyard, or burial ground normally includes not only the lots for interring the dead, but also walkways and grounds for shrubbery, markers, and ornaments. Because a controversy has arisen, it would be useful and proper for the

plaintiffs to ascertain the boundaries of the cemetery as dictated by the language of the 1897 deed.

It does not follow that the plaintiffs should be entitled to enclose the burial ground. There is no evidence that the defendants are desecrating the graveyard or are allowing their livestock or domestic animals to desecrate the graveyard. (The defendants, too, are descendants of Mordecai Sullivan and thereby related to those interred in the cemetery.) On the other hand, because the graveyard is located in fields used for hay and, perhaps, other crops, enclosure may constitute an unnecessary interference with the fee. Therefore, under the existing facts and circumstances, the court denies the plaintiffs the privilege of erecting an enclosure around the cemetery without the concurrence of the defendants.

At the January 26th hearing, counsel asked the court to permit the parties an opportunity to agree upon specific "rules and regulations" for access to and use of the cemetery in the event the court determined that the plaintiffs have the right to the use and benefits of the cemetery. In response to that request, the court will allow the parties until February 12, 1999, to agree upon such "rules and regulations"; otherwise, the court will resolve the issue.