FILED

**June 5, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 18-0214 – *Harrell et al. v Cain et al.*

WORKMAN, J., dissenting:

I dissent to the majority's affirm of the circuit court's conclusion regarding the parties' intention because it ignores the actual language of the deed in favor of self-serving, non-dispositive testimony. While I recognize the majority's deference to the circuit court's role as factfinder, this Court has made clear that

> [t]he deference accorded to a circuit court sitting as factfinder may evaporate if upon review of its findings the appellate court determines that . . . a relevant factor that should have been given significant weight is not considered . . . [or] the circuit court in weighing those factors commits an error of judgment[.]

Syl. Pt. 1, in part, *Brown v. Gobble*, 196 W. Va. 559, 474 S.E.2d 489 (1996). Here, the circuit court ignored the parties' *expressed* intention in the deed as to the southern boundary of the property to be conveyed and instead, cherry-picked self-serving testimony about which brother "acted as though" he was the owner. The majority fails to realize or concede that, *as joint tenants*, the fact that one brother utilized the jointly owned property more heavily than the other does not, under any construct of our law, serve to render him the sole owner or adequately provide compelling evidence of intent.

It is undisputed that in the property description in Arthur Lewis' deed, the lone ambiguity is the precise north/south location of the southern boundary of the parcel attempted to be conveyed. However, that boundary is not wholly without definition; rather, it is described as running from a *specific* eastern boundary to a *specific* western boundary

1

on a *specific* bearing: "beginning at a point on the Pennsylvania state Line, then North 68°-54'-11" West to the centerline of the dirt road . . . ." It is undisputed that this call is on the same bearing as 1) the southern boundary of the original 121-acre parcel as indicated in the Baker survey; and 2) the southern boundary of the Goddard farm, as the property was previously identified in the chain of title. Nevertheless, the circuit court did not explain, construe, or even mention this call. Rather, upon finding the description ambiguous due to this modest imprecision, the circuit court discarded the deed language altogether as though it ceased to exist. The majority does likewise—hoping to obscure this obvious omission in a mountain of decades-old cases regarding ambiguity and extrinsic evidence, none of which are in dispute or remotely dispositive.

The lack of precision in describing the southern boundary by no means renders the deed void: "[W]e do not find the omission of express lines of reference to be fatally defective. The clause speaks of facts and circumstances which render the description ascertainable." *Sally-Mike Properties v. Yokum*, 175 W. Va. 296, 302, 332 S.E.2d 597, 602–03 (1985). A finding of ambiguity opens up the factfinder to consideration of extrinsic evidence *to give meaning to the deed language* and "render the description ascertainable." It does not authorize a free-for-all of hearsay and unreliable "conduct" evidence to determine which party "acted" more like the owner, *particularly when the factual scenario is complicated by allegations of joint tenancy*. The court's order consists almost entirely of discussion of this "subsequent conduct" testimony, which was largely tantamount to ordinary usage by a co-tenant or, worse, unexplained conduct by

2

deceased individuals.[1]  Under the majority's analysis, if joint tenants do not equally utilize jointly owned property, they may effectively oust the other if their deed is in some way ambiguous.[2]  More incredibly, the majority suggests that a joint tenant must "challenge" a co-owner's entirely proper use of the property lest he be deemed to have relinquished his joint tenancy under an ambiguous deed.[3]

More to the point, allowing such "conduct" evidence to trump the parties' intention, as expressed in the language of the deed, simply because it has been given the apparently-transformative designation of "ambiguous" is directly contrary to our law:

---

[1] In particular, the circuit court was critical of Raymond Lewis' now-deceased widow for failing to include the disputed property in his estate appraisement.  Obviously, without her testimony, we cannot be sure how or why that occurred.  Raymond Lewis' son, who likewise omitted the property from his mother's estate appraisement, testified that he did not personally prepare the appraisement, but rather, his lawyers did so.

[2] The majority boldly declares that Arthur "acted as though" he were the owner by living on it, building a lake on it, and inviting/excluding persons from the property, finding this dispositive.  The majority fails to explain in what way this is inconsistent with the rights and actions of a *joint* tenant, which petitioners claim Arthur was.  Must a co-tenant make equal use of a property as his or her co-tenant does to avoid a court using this lack of equal use against them as "conduct" evidence?

Moreover, the majority states that it does not decide this case on the basis of adverse possession as did the circuit court.  Yet it uses the exact same evidence the circuit court used as evidence of adverse possession, but simply recharacterizes it as evidence of "intent."  Regardless, at base, the majority's repeated references to Arthur "acting as though" he was the owner is merely a finding of adverse possession disguised as "intent."  As *joint* tenants, one co-tenant "acting as though" he or she is the owner of a property is demonstrative of nothing since he is, in fact, an owner.

[3] The majority notes that Raymond "never challenged Arthur's assertion of ownership[.]"  Given that Arthur's conduct is entirely consistent with the rights of a joint tenant, why then would Raymond ever seek to "challenge" it?

3

> Intention disclosed, if at all, by inference or implication, is not allowed to prevail over a different intention expressed in terms. *The language of the instrument itself, and not surrounding circumstances, is the first and foremost evidence of the parties intent.*

*Sally-Mike Properties*, 175 W. Va. at 300, 332 S.E.2d at 601 (emphasis added) (citations omitted). *See Zimmerer v. Romano*, 223 W. Va. 769, 780, 679 S.E.2d 601, 612 (2009) (reversing circuit court where ruling "effectively accords no significance to the language of the deed"). Not only did the circuit court and majority fail to afford the language of the instrument "first and foremost" treatment, they ignored it altogether, along with this controlling caselaw.

> This Court has explained that in making a conveyance,

> "the description thereof 'must either be certain in itself or *capable of being reduced to a certainty by a recurrence to something extrinsic to which it refers.* . . . There must be language in the deed sufficient to serve as a pointer or a guide to the ascertainment of the location of the land.'"

*Highway Properties v. Dollar Sav. Bank*, 189 W. Va. 301, 305, 431 S.E.2d 95, 99 (1993) (quoting *Allen v. Duvall,* 316 S.E.2d 267, 270 (N. C. 1984)). In other words, a reference in a deed to something extrinsic which allows one to identify the property will serve to identify the property conveyed. The call contained in the Baker survey is precisely such extrinsic evidence; it is the "pointer or [] guide" which identifies the property. More specifically,

> [a] *call in a description in a deed, susceptible of application to a tract of land owned by the grantor at the date of execution thereof, for monuments like some of those mentioned in the title*

4

> *papers under which he held such tract*, is admissible evidence tending to prove identity of the land granted by the deed with so much of the land so owned as can be reasonably brought within the description.

Syllabus, *Adams v. Tilley*, 87 W. Va. 332, 104 S.E. 601 (1920) (emphasis added).

Without question, the call in the deed mimicking the call in the Baker survey plainly proves the identity of the land conveyed; otherwise, what purpose did inclusion of that call serve? The brothers otherwise painstakingly followed the boundaries of the property as described in the Baker survey, using those precise landmarks and boundaries. Yet, when it comes to the southern boundary line, the circuit court and majority would have one believe their inclusion of the precise bearing of the southern boundary of the 121-acre parcel was merely surplusage with no significance or purpose simply because they failed, as laypersons, to properly include a starting point.

Not only is the majority's conclusion legally unsound, it is factually flawed. Rather than affording the language in the deed its most obvious interpretation—that by using that specific call from the Baker survey, the brothers intended to mimic the boundary line which followed that bearing—the circuit court and majority take the unsupported leap that the brothers intended to carve off approximately 40 acres to Raymond, yet convey the remaining approximate *100 acres*, more or less, to Arthur. Not only is this facially inequitable and therefore reason enough to suspect that this was not the parties' intention, it is directly contradicted by the express language of the deed.

If the description in Arthur's deed demonstrates nothing else, it plainly states that the southern boundary of the property being conveyed is a *straight* line on a bearing North 68°, 54'-11" in a westerly direction from the Pennsylvania state line to a line on a road on the western border of the property. However, the southernmost boundary of the parcel awarded by the circuit court *does not run in a straight line*. As reflected by the maps contained in the appendix record, the southern border of the 60-acre parcel is jagged and runs north and south at various points. Accordingly, the circuit court and majority have not only subverted the intention expressed in the deed, they have granted ownership of property in direct contravention of the express language of the deed.

Accordingly, I respectfully dissent.