No. 18-0507 – *David L. Henzler v. Turnoutz LLC, and Larry Markham*

WORKMAN, J., dissenting:

**FILED**
**June 12, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

As the circuit court correctly found, the settlement agreement at issue clearly applies to Respondent Turnoutz, LLC (hereinafter "Turnoutz") and encompasses the claims brought by Petitioner David L. Henzler in this civil action. The majority's decision reversing that order and allowing this litigation to proceed, despite the fact that ample discovery was conducted, is incorrect. Today's decision is contrary to the plain language of the settlement agreement as well as the bedrock principle that "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." Syl. Pt. 1, *Sanders v. Roselawn Mem'l Gardens, Inc.*, 152 W. Va. 91, 159 S.E.2d 784 (1968). The majority has not cited one case that allows a party to retain the fruits of a settlement agreement while breaching the terms of the deal. I therefore dissent.

Before examining the language of the Severance Agreement and General Release (hereinafter "Agreement"), it is important to summarize the facts leading up to its execution. Mr. Henzler was employed by CrossAmerica Partners, LP (hereinafter "CrossAmerica") as an area supervisor at a convenience store. Mr. Henzler worked for CrossAmerica and its predecessor, One Stop, Inc., for approximately nineteen years. The parties describe Mr. Henzler as having worked for CrossAmerica and M&J Operations,

1

LLC (hereinafter "M&J") interchangeably. In 2016, CrossAmerica ceased operations at approximately forty-one convenience stores and Mr. Henzler's position ceased to exist.

Meanwhile, Turnoutz began leasing certain One Stop sites and operating convenience stores out of those locations. Mr. Henzler applied for a position of territory manager with Turnoutz, and in March 2016, he was notified that he had not been selected for the position. A month later, Mr. Henzler entered into the Agreement. In exchange for payment of $13,721 Mr. Henzler agreed to release "any and all claims"[1] against

> M&J, CST Brands, Inc. ("CST"), CrossAmerica Partners LP (f/k/a Lehigh Gas Partners LP) ("CAP"), each of their respective Affiliates (as hereinafter defined), parents, partners, subsidiaries, divisions, assigns, predecessors, and successors (by merger, acquisition or otherwise), and the past, present and future officers, directors, trustees, partners, shareholders, managers, employees, agents, representatives, volunteers, consultants, insurers and attorneys of and for each of the foregoing, and their heirs, executors, administrators, legal representatives and assigns (hereinafter referred to as the "Company Released Parties") . . . .

An attachment to the Agreement, Exhibit A, lists the job titles and ages of persons who were selected for termination of employment as of March 2016 and eligible to receive a severance offer. Exhibit A also lists the job titles and ages of persons who

---

[1] The Agreement released these entities "from any and all claims, demands, causes of actions, and liabilities of any nature, but past and present, known and unknown, resulting from any act or omission of any kind occurring on or before the date of execution of this Agreement[.]" Specifically included in the claims released under the Agreement were claims arising under "the Age Discrimination in Employment Act, as amended; the Older Worker Benefit Protection Act of 1990; [and] the West Virginia Human Rights Act."

were *not* selected for termination of employment as part of the "reorganization program," because they were hired by Turnoutz. The majority does not mention this document which categorically supports Turnoutz's position that it was an entity covered by the Agreement.

Not holding true to his end of the bargain, Mr. Henzler then filed the instant complaint against Turnoutz in October 2016 alleging failure to hire/age discrimination.[2] He claimed Turnoutz "hired a substantially younger, less qualified individual(s) for the position" in violation of the West Virginia Human Rights Act. Following discovery, Turnoutz filed a motion to dismiss and/or for summary judgment a year into this litigation. Turnoutz argued that Mr. Henzler had released it from the claims he was alleging.

Following a hearing, the circuit court granted Turnoutz's motion for summary judgment and held that

> Turnoutz, LLC and Larry Markham are Company Released Parties, affiliates, successors, franchisees, and contractually related parties of [Mr. Henzler's] prior employer(s) according to the terms, definitions and conditions in the Release Agreement signed by [Mr. Henzler] which released all claims against such entities. Therefore, [the] Complaint, and each purported cause of action alleged therein, is barred by the actions of [Mr. Henzler] which amount to and constitute waiver and release of any right or rights that [he] may have had in relation to any matters alleged in the Complaint; and no genuine issues of material fact exist for trial.

---

[2] Mr. Henzler also sued Turnoutz's principal, Respondent Larry Markham. Consistent with the majority opinion, and for the sake of clarity, Turnoutz and Mr. Markham are collectively referred to here as "Turnoutz."

[Mr. Henzler] waived any and all rights to assert any employment related claims against [Respondents] herein, as the [Respondents] are successors, affiliates, assigns, heirs and/or "Company Released Parties" of [Mr. Henzler's] prior employer under the terms and conditions of the "Severance Agreement and General Release" a legally binding contractual agreement that [Mr. Henzler] voluntarily signed.

First, the circuit court correctly applied the express and unambiguous language of the Agreement including its broad and comprehensive general release of *all* claims Mr. Henzer may have had against Turnoutz after it chose not to hire him. Mr. Henzler expressly waived any right to bring the claims alleged in the instant lawsuit when he voluntarily entered into the Agreement in exchange for payment of $13,721. General releases, such as the Agreement at issue, are an important tool for settling disputes precisely because they are designed to provide "complete peace." *In re Philadelphia Stock Exch., Inc.,* 945 A.2d 1123, 1137 (Del. 2008).

Here, we are left with no room for interpretation because the language of the Agreement is unambiguously sweeping and broad. The Agreement explicitly extinguished all claims, known or unknown, arising out of or in any way related to Turnoutz's decision to not hire Mr. Henzler. In this Agreement, the parties took pains to express affirmatively (albeit redundantly) their intention to extinguish "any and all claims, demands, causes of actions, and liabilities of any nature, but past and present, known and unknown, resulting from any act or omission of any kind occurring on or before the date of execution of this Agreement."

4

The second question presented in this case is straightforward: whether Turnoutz is a "Company Released Party" under the Agreement. "'A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' Syl. pt. 1, *Cotiga Development Company v. United Fuel Gas Company,* 147 W. Va. 484, 128 S.E.2d 626 (1963)." Syl. Pt. 1, *Sally-Mike Props. v. Yokum,* 175 W. Va. 296, 332 S.E.2d 597 (1985).

The circuit court also correctly found that Turnoutz fell under the broad umbrella of entities covered by the Agreement as it is a successor of Mr. Henzler's former employers considering the seamless transition of the business operation. "Where the terms of a contract are clear and unambiguous, they must be applied and not construed." Syl. Pt. 2, *Bethlehem Mines Corp. v. Haden,* 153 W. Va. 721, 172 S.E.2d 126 (1969). Under the agreement, Mr. Henzler agreed to release any claims against "M&J, CST Brands, Inc. ("CST"), CrossAmerica Partners LP (f/k/a Lehigh Gas Partners LP) ("CAP"), each of their respective Affiliates . . . , parents, partners, subsidiaries, divisions, assigns, predecessors, and *successors (by merger, acquisition or otherwise)*[.]" (Emphasis added).

Addressing the term "successors," the majority states that: "Turnoutz cites to the Master Lease Agreement and its amendments, the tertiary agreements, and its own discovery responses to substantiate its argument that it is a successor to CAP due to its continuance of CAP's operations of the One Stop stores." The majority wholly disregards

5

the import of this undisputed relevant evidence: Turnoutz was "otherwise" a successor when it assumed the interests of the various companies operating the One Stop stores. Genuine issues of dispute material fact do not remain when evidence demonstrates that Turnoutz was a successor under the plain and ordinary meaning of that term[3] because it was vested with the rights and duties of the earlier corporations by "other assumption of interests," which is precisely why summary judgment in favor of Turnoutz was the appropriate ruling.

The majority opinion muddles through the various corporate relationships and agreements. And all to what end? None at all, it turns out. By remanding this case for further proceedings, the majority drops us back where we began, leaving the circuit court and the parties with zero guidance moving forward. Respectfully, I would enforce the plain terms of the Agreement and affirm.

---

[3] A "successor" is defined as: "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." Black's Law Dictionary (11th ed. 2019).