# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2024 Term

_____

No. 23-ICA-324
No. 23-ICA-383

_____

**FILED**

**October 15, 2024**

**released at 3:00 p.m.**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

WHEELING JESUIT UNIVERSITY, INC.,
Defendant Below, Petitioner,

v.

KATHRYN A. VOORHEES, JASON FULLER, JESSICA WROBLESKI,
PETER EHNI, ANDREW STARON, AMY CRINITI PHILLIPS,
NANCY BRESSLER, and JOHN W. WHITEHEAD III,
Plaintiffs Below, Respondents.

_____

Appeal from the Circuit Court of Ohio County
Honorable Ronald E. Wilson, Judge

Case No. CC-35-2019-C-218

AFFIRMED, IN PART,
REVERSED, IN PART, AND REMANDED

_____

Submitted:  September 4, 2024
Filed:  October 15, 2024

John R. Merinar, Jr., Esq.                     Walt Auvil, Esq.
Jeffrey M. Cropp, Esq.                          Kirk Auvil, Esq.
Steptoe & Johnson, PLLC                   The Employment Law Center, PLLC
Bridgeport, WV                                    Parkersburg, WV
Counsel for Petitioner                          Counsel for Respondents

JUDGE LORENSEN delivered the Opinion of the Court.

LORENSEN, JUDGE:

Petitioner Wheeling Jesuit University, Inc. ("WJU") appeals the January 20, 2023, and June 26, 2023, orders of the Circuit Court of Ohio County granting Respondents Kathryn Voorhees, Jason Fuller, Jessica Wrobleski, Peter Ehni, Andrew Staron, Amy Criniti Phillips, Nancy Bressler, and John W. Whitehead III's (collectively "Respondents") second motion for summary judgment and itemized statement of damages. On August 15, 2023, the circuit court entered its Final Judgment Order memorializing its findings from the two previous orders.

Respondents were either tenured or tenure-track faculty members at WJU. On March 28, 2019, Respondents were notified that their employment would not be renewed for the 2019-2020 academic year due to a declaration of financial exigency made by the WJU board of trustees. In its order granting summary judgment, the circuit court held that WJU breached Respondents' employment contracts and violated the West Virginia Wage Payment and Collection Act ("WPCA"). The circuit court awarded damages for unpaid wages plus liquidated damages pursuant to the WPCA.

Upon review, we find that the circuit court erred when it granted summary judgment as to the tenure-track Respondents' breach of contract claim, but affirm the circuit court's grant of summary judgment as to the tenured Respondents. We further find that the WPCA does not apply to Respondents and reverse and remand for entry of an order recalculating damages to consider mitigation as to three of the four tenured Respondents,

1

including Respondents Wrobleski, Ehni, and Whitehead. With respect to Respondent Voorhees' mitigation of damages, we remand for the circuit court to consider whether WJU met its burden pursuant to *Rodriguez v. Consolidation Coal Co.*, 206 W. Va. 317, 327, 524 S.E.2d 672, 682 (1999) (citation omitted) and reverse and remand to the circuit court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondents are all former faculty members of WJU. In or around February of 2018, Respondents were issued Notices of Reappointment for the 2018-2019 academic year. Pursuant to these notices, four of the Respondents, Fuller, Staron, Phillips, and Bressler (the "tenure-track Respondents") were reappointed to tenure-track positions in their probationary period. The remaining four Respondents, Voorhees, Wrobleski, Ehni, and Whitehead (the "tenured Respondents") were appointed to tenured positions.

Approximately a year later, on March 28, 2019, each of the eight Respondents received a notice of non-reappointment stating their employment was being terminated at the end of the 2018-2019 academic year due to WJU's financial exigency. WJU determined that it needed to make significant changes to its academic programs to remain open to students. WJU completely eliminated certain academic programs, including the English major, the Chemistry major, and the Theology major. Other programs, including the Physics major, were reduced. Respondents' positions were affected by the cuts made to the WJU academic programs. WJU continued to pay Respondents their

salaries and benefits through the end of the 2018-2019 academic year and their appointments ended on August 31, 2019.

Respondents' terms and conditions of employment were set forth in the Wheeling Jesuit University Faculty Handbook (2/23/18) ("Faculty Handbook").[1] Pursuant to the Faculty Handbook, tenured or tenure-track faculty members who are terminated during the term of an appointment "not for cause" are entitled to receive a "terminal appointment" for the following academic year. A terminal appointment entitles faculty members to an extra academic year of employment. Whether the faculty member is asked to teach during the terminal appointment is at the discretion of the President of WJU, but if the faculty member chooses to decline such a request, the employment relationship is severed.

Respondents filed the underlying action against WJU, arguing that WJU breached their employment contracts by refusing to provide them with terminal appointments for the 2019-2020 academic year. Respondents also argued that WJU violated the WPCA because WJU's refusal to grant them terminal appointments resulted in unpaid wages for the 2019-2020 academic year. The parties filed cross motions for summary judgment. In granting Respondents' motion, the circuit court held that

---

[1] WJU notes in its brief that WJU faculty have a role in drafting, revising, and amending the Faculty Handbook.

3

Respondents were not terminated "for cause" because the definition of "for cause" in Section 13.3 of the Faculty Handbook does not include financial exigency. The circuit court also agreed with Respondents that WJU violated the WPCA when it refused to pay Respondents' wages for the terminal appointments. The circuit court granted Respondents' Itemized Statement of Terminal Contract Damages, which awarded Respondents damages for lost wages for the 2019-2020 academic year as well as liquidated damages. On August 15, 2023, the circuit court entered its Final Judgment Order, which memorialized its holdings from the prior orders. It is from these orders that WJU now appeals.[2]

## II. STANDARD OF REVIEW

The West Virginia Supreme Court of Appeals has long held that "'"[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 1, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). We review a circuit

---

[2] WJU appealed the circuit court's order granting Respondents' motion for summary judgment and order granting Respondents' itemized statement of terminal contract damages. The Court docketed this appeal as 23-ICA-324. Shortly thereafter, the circuit court entered a Final Judgment Order pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure, which WJU separately appealed. This appeal was docketed as 23-ICA-383. This Court granted the parties' joint motion to consolidate 23-ICA-324 and 23-ICA-383 for the purposes of briefing, consideration, and decision.

court's ruling on a motion for summary judgment *de novo*. *See* Syl. Pt. 1, *Painter v Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Further, "we apply a *de novo* standard of review to [a] circuit court's interpretation of [a] contract." *Home Inspections of VA and WV, LLC v. Hardin*, 244 W. Va. 173, 176, 852 S.E.2d 240, 243 (2020).

## III. DISCUSSION

WJU asserts four assignments of error on appeal. First, WJU argues that the circuit court erred in granting summary judgment on Respondents' breach of contract claim regarding Respondents' eligibility for terminal appointments as WJU's state of financial exigency was a "for cause" reason for termination. Second, WJU argues that the circuit court erred when it granted summary judgment on Respondents' WPCA claim because a terminal appointment does not satisfy the definition of wages or accrued fringe benefits under the WPCA.

WJU makes two alternative arguments in the event we determine that the circuit court did not err in granting summary judgment. First, WJU argues that the circuit court erred by failing to reduce Respondents' damages by their interim earnings as required by West Virginia Code § 55-7E-3(a) (2015). Second, WJU argues that the circuit court erred in failing to reduce Respondent Voorhees' damages because she did not engage in reasonable diligence to find subsequent employment pursuant to West Virginia Code § 55-7E-3(a).

5

## A. Breach of contract claims

WJU argues that the circuit court erred when it applied Section 7.5 instead of Section 7.4 of the Faculty Handbook to the tenure-track Respondents and found that WJU had breached Respondents' employment contracts.[3] WJU argues that neither the tenured nor tenure-track faculty members were eligible for terminal appointments because WJU had declared that it was in a state of financial exigency. We will address tenure-track and tenured faculty separately below.

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 3, *Miller v. WesBanco Bank, Inc.*, 245 W. Va. 363, 859 S.E.2d 306 (2021) (quoting Syl. Pt. 1, *Sally-Mike Properties v. Yokum*, 175 W. Va. 296, 332 S.E.2d 597 (1985)). "If language in a contract is found to be plain and unambiguous, such language should be applied according to such meaning." *Fraternal Ord. of Police, Lodge No. 69 v. City of Fairmont*, 196 W. Va. 97, 101, 468 S.E.2d 712, 716 (1996).

---

[3] The parties do not dispute that the Faculty Handbook formed the basis and defined the terms of a contract in this case. *See Keener v. Clay County Development Corp.*, 247 W. Va. 341, 353, 880 S.E.2d 63, 75 (2022).

6

## 1. Tenure-track faculty

WJU argues that this Court should apply Section 7.4, not Section 7.5 of the Faculty Handbook, to tenure-track faculty. Section 7.4 specifically relates to the non-renewal of a tenure-track appointment in probation at the *end of a term*. In full, Section 7.4 states:

> **7.4 Non-Renewal of a Multi-Year Appointment, a Non-Tenure-Track Appointment, or a Tenure-Track Appointment in Probation at End of Term**
>
> **Tenure-track faculty appointments in probation** and non-tenure track faculty appointments **may not be renewed at expiration of the appointment period based upon financial exigency (legal term)**; change in University mission or needs; **program termination, reduction, or redirection**; a faculty member's inability to perform or lack of performance of the essential functions or fundamental job duties of his position; mental or physical disability; failure to comply with University policies; conviction of a felony; or moral turpitude, as determined by the Administration. (emphasis added)

In contrast, Section 7.5 relates to *termination during the term* for tenured or non-tenure-track faculty members. In full, Section 7.5 states:

> **7.5 Termination of a Tenured Appointment or of a Non-Tenure-Track Appointment During the Term**
>
> **A tenure appointment or non-tenure track appointment during term may be terminated because of financial exigency (legal term)**; change in University mission or needs; **program termination, reduction, or redirection**; a faculty member's inability to perform or lack of performance of the essential functions or fundamental job duties of his position;

7

mental or physical disability; failure to comply with University policies; conviction of a felony; or moral turpitude. Revocation of an appointment during the term because of professional incompetence (for cause) is termed dismissal. In the case of the termination of a faculty member for any of these circumstances, the President, CAO and appropriate Chair must meet to review, discuss, and recommend termination to the Board of Trustees which will make the final decision. A faculty member who has been terminated has the right to appeal through the Due Process Procedures in Section 13.

**Tenured or tenure-track faculty members whose appointments are terminated (not for cause), are given a terminal appointment for the next academic year.** At the discretion of the President, a faculty member may or may not be asked to teach during the terminal appointment. If the faculty member is offered the opportunity to teach, and chooses not to do so, the employment relationship is severed. (emphasis added)

The parties dispute whether the second paragraph of Section 7.5 applies to tenure-track faculty members whose appointments were not renewed for the next academic year. WJU argues that Section 7.5 contemplates an appointment's termination *during the term* and does not apply here because Respondents remained employed for the entire current appointment (the 2018-2019 academic year). On the other hand, Respondents argue that the plain language of Section 7.5 requires that all tenured or tenure-track faculty are entitled to terminal appointments upon termination.

Here, the tenure-track faculty members were given notice on March 28, 2019, that their appointments were not to be renewed for a new term (the 2019-2020 academic year), but they were permitted to complete the remainder of their current

8

appointment term. Under the plain language of the Faculty Handbook, their appointments were not terminated during the term as contemplated in Section 7.5. Instead, tenure-track Respondents' appointments were simply not renewed, as provided for in Section 7.4. Although the second paragraph of Section 7.5 states that "[t]enured or tenure-track faculty members whose appointments are terminated (not for cause), are given a terminal appointment for the next academic year," Section 7.4 of the Faculty Handbook, which governs the nonrenewal of tenure-track faculty appointments in probation, does not include a similar provision providing terminal appointments. As the tenure-track Respondents' appointments were not renewed under Section 7.4, Section 7.5 did not apply to them, and they were not entitled to terminal appointments. The second paragraph in Section 7.5 of the Faculty Handbook would only be applicable to the tenure-track faculty members if their appointments had been terminated prior to the end of the academic year appointment, which they were not. Accordingly, we reverse the circuit court's holding that WJU breached the tenure-track Respondents' employment contracts by failing to grant them terminal appointments for the 2019-2020 academic year.

## 2. Tenured faculty

In contrast to the tenure-track Respondents above, the tenured Respondents were entitled under the Faculty Handbook to continuous appointments (as opposed to year-by-year appointments in the case of tenure-track faculty) in their respective departments. "Tenure" is defined in Section 6.4.4 of the Faculty Handbook as:

6.4.4   Tenure

**Tenure means the right to continuous appointments as a ranked member of a particular department or program within a particular department until the faculty member dies, retires, resigns or is dismissed for adequate cause or lack of institutional need as indicated in Sections 7.5, 7.6, 7.7, or 7.8 of this Handbook.** The Tenure appointment is normally for full-time service but, by mutual agreement, it may specify a reduced load. (emphasis added)

Section 6.4.4 specifically permits WJU to dismiss tenured faculty based on financial exigency, as indicated in Section 7.5. "Financial exigency" is defined as:

7.6     Financial Exigency

"Financial Exigency" (a legal term) is defined as the critical, pressing, or urgent need on the part of the University to reorder its monetary expenditures in such a way as to remedy and relieve the state of urgency within the University created by its inability to meet its annual monetary expenditures with sufficient revenue to prevent a sustained loss of funds and/or abandonment of its stated institutional mission.

Financial Exigency must be declared by the Board of Trustees. Reasons for declaring financial exigency must be given in writing to those Faculty Council members who agree to sign an NDA. The Faculty Council may tell the Faculty that they (as members of Council) agree or disagree with the necessary measures.

Unlike with the tenure-track Respondents, WJU does not dispute that it terminated the tenured Respondents' appointments pursuant to Section 7.5. Instead, WJU contends that financial exigency is a for-cause reason for termination of tenured faculty and thus, the tenured faculty here are not entitled to terminal appointments. We disagree. Section 13.3 of the Faculty Handbook states, in part:

10

13.3    Dismissal and Suspension

Individual faculty members who have tenure or whose term of appointment has not expired may be dismissed for cause. **"For cause," includes poor teaching performance, negligence in the performance of duty, repeated failure to meet the express written policies of the institution, moral turpitude, professional, financial or ethical dishonesty, conviction of a felony, or loss of licensure/certification.** [sic] (emphasis added)

Here, WJU was permitted to terminate tenured faculty due to financial exigency per Section 7.5, but financial exigency is not a "for cause" reason for dismissal that would preclude the tenured Respondents from receiving terminal appointments. Thus, WJU breached the tenured Respondents' employment contracts by failing to provide them terminal appointments for the 2019-2020 academic year.

## B.  West Virginia Wage Payment and Collection Act

In our discussion above, we concluded that the tenured Respondents are entitled to terminal appointments per their employment agreement. Whether the tenured Respondents are entitled to the civil penalty provisions of the WPCA due to WJU's failure to honor the terminal contracts depends on whether terminal appointments constitute "wages" or "fringe benefits" per the WPCA. The WPCA states: "[i]f a person, firm, or corporation fails to pay an employee wages as required under this section, the person, firm, or corporation, in addition to the amount which was unpaid when due, is liable to the employee for **two times that unpaid amount as liquidated damages**." (emphasis added). W. Va. Code § 21-5-4(e) (2022). The WPCA defines wages and fringe benefits as:

11

**The term "wages" means compensation for labor or services rendered by an employee**, whether the amount is determined on a time, task, piece, commission, or other basis of calculation. As used in § 21-5-4, § 21-5-5, § 21-5-8a, § 21-5-10, and § 21-5-12 of this code, **the term "wages" shall also include then accrued fringe benefits capable of calculation and payable directly to an employee.**

W. Va. Code § 21-5-1(c) (2021) (emphasis added).

Respondents argue that this case is analogous to *Miller v. St. Joseph Recovery Cntr. LLC*, 246 W. Va. 543, 874 S.E.2d 345 (2022). In *Miller*, our Supreme Court of Appeals interpreted the definition of fringe benefits to include a severance package owed pursuant to an employment contract. *Id.* The court reasoned that "[t]he severance package was an inducement to procure an employee's services and represented a form of deferred compensation for work performed during the employment." *Id.* at 553, 874 S.E.2d at 355. Moreover, the court emphasized the importance of the terms of the employment contract when deciding when a fringe benefit vests. On this issue, the court held that "[t]he concept of vesting is concerned with expressly enumerated conditions or requirements all of which must be fulfilled or satisfied before a benefit becomes a presently enforceable right." *Id.* Thus, unless the employment contract expressly contains language to the contrary, a severance package is considered a fringe benefit and subject to the WPCA. *Id.*

We find that *Miller* is distinguishable from the facts before us. Section 7.5 of the Faculty Handbook states that "[a]t the discretion of the President, a faculty member

12

*may or may not* be asked to teach during the terminal appointment. If the faculty member is offered the opportunity to teach, and chooses not to do so, the *employment relationship is severed*." (emphasis added). Here, terminal appointments do not constitute a fringe benefit under West Virginia Code § 21-5-1(c) because terminal appointments contemplate *possible future* wages for *possible future* services rendered by the employee. Rather, the terminal appointment constitutes a conditional one-year term of employment where the employment relationship is not severed unless a faculty member chooses not to provide services during the term. Unlike in *Miller* where the severance package represented deferred compensation for work the employee already rendered, here, the terminal appointments contemplated future services that would never be rendered.[4] The tenured Respondents would only be paid pursuant to their terminal contracts if they performed the services required to fulfill the appointments. Thus, the circuit court erred in finding that terminal appointments constitute "wages" pursuant to the WPCA and in awarding consequent liquidated damages.

### C. Mitigation of damages

Next, we move to WJU's two remaining assignments of error that were raised in the alternative. First, WJU argues that the circuit court erred when it found that the tenured Respondents had no duty to mitigate their damages and awarded them the full

---

[4] The parties stipulated that no request to teach during the terminal appointment year was made as to any Respondents.

13

amount of their salaries for the 2019-2020 academic year, plus liquidated damages, even though all but one of the tenured Respondents found subsequent employment for the 2019-2020 academic year.[5]

### 1. Tenured Faculty Who Mitigated

Pursuant to West Virginia Code § 55-7E-3(a):

> In any employment law cause of action against a current or former employer, regardless of whether the cause of action arises from a statutory right created by the Legislature or a cause of action arising under the common law of West Virginia, **the plaintiff has an affirmative duty to mitigate past and future lost wages** . . . Any award of back pay or front pay by a commission, court or jury **shall be reduced by the amount of interim earnings or the amount earnable with reasonable diligence by the plaintiff**. It is the defendant's burden to prove the lack of reasonable diligence. (emphasis added)

Here, Respondents Wrobleski, Ehni, and Whitehead are all former employees of WJU that have common law contract claims against WJU. Under those claims, Respondents Wrobleski, Ehni, and Whitehead have sought, and were awarded by the circuit court, back pay for the terminal appointments that WJU failed to award them. Based on our foregoing holding that terminal appointments are not a fringe benefit like the severance package in *Miller*, West Virginia Code § 55-7E-3(a) requires that the tenured Respondents mitigate their lost wages due to WJU's breach. Our Legislature made it clear

---

[5] WJU argues that all Respondents were required to mitigate their damages. However, based on our finding above that there was no breach of contract with the tenure-track Respondents, we address mitigation solely as it relates to the tenured Respondents.

14

that the "purpose of this article is to provide a framework for adequate and reasonable compensation to those persons who have been subjected to an unlawful employment action, but to ensure that compensation does not far exceed the goal of making a wronged employee whole." West Virginia Code § 55-7E-2(b). By not considering Respondents Wrobleski, Ehni, and Whitehead's actual mitigation, the circuit court's calculation of damages for three of the four tenured Respondents far exceeded the goal of West Virginia Code § 55-7E-2 to make a wronged employee whole.[6]

The circuit court relied on *Miller* in holding "mitigation has no relevance to wages already earned while [Respondents] were employed by [WJU]." Having found that *Miller* and the WPCA are inapplicable to the facts before us, we hereby find West Virginia Code § 55-7E-3(a) requires that the circuit court reduce the tenured Respondents' back pay by the amount of their interim earnings. Accordingly, we find that the circuit court erred in failing to consider the interim earnings of Respondents Wrobleski, Ehni, and Whitehead and reverse and remand for recalculation of damages.

---

[6] As stated above, the tenured Respondents are not entitled to liquidated damages. The circuit court's significant damages award against WJU is due in large part to the liquidated damages award, which was the tenured Respondents' salary, plus two times their salary in liquidated damages.

15

## 2. Tenured Faculty Who Did Not Mitigate

Second, WJU argues that the circuit court erred when it failed to reduce Respondent Voorhees' damages because she did not engage in reasonable diligence to find subsequent employment. West Virginia Code § 55-7E-3(a) imposes an affirmative duty to mitigate any claim for past or future wages. *See also Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 618, 803 S.E.2d 582, 588 (2017). On mitigation, the Supreme Court of Appeals of West Virginia has held:

> An employee, demanding damages for alleged breach of his contract of employment, may rest his case upon proof of a valid contract and its breach, the measure of his damages being the contract price of his services. Mitigation of damages is an affirmative defense, and its burden is entirely on the contract breaker. This burden is not sustained by showing that the injured party was offered employment, though similar to that contracted, unless at a place reasonably convenient to him.

Syl., in part, *Martin v. Bd. of Ed. of Lincoln Cnty.*, 120 W. Va. 621, 199 S.E. 887 (1938). In the related context of employment discrimination claims, the Supreme Court has explained that "[t]he defendant may satisfy his burden [on mitigation] only if he establishes that: (1) there were substantially equivalent positions which were available; and (2) the claimant failed to use reasonable care and diligence in seeking such positions." *Rodriguez v. Consolidation Coal Co.*, 206 W. Va. 317, 327, 524 S.E.2d 672, 682 (1999) (citation omitted). We find that *Rodriguez* provides relevant criteria for evaluating diligence in a breach of employment contract case like the case at hand.

16

As we concluded above, Respondent Voorhees properly established that she had a valid breach of contract claim. Once established, the burden then shifted to WJU to establish that there were substantially equivalent positions available, and that Respondent failed to use reasonable care and diligence in seeking such positions and thereby failed in her duty to mitigate. Respondent Voorhees testified that she applied for three positions after she received her notice of non-reappointment: (1) a position at a wellness center; (2) a position at a shop that sold artisans' work; and (3) a position at a flower shop. She admitted that she did not seek any employment in higher education and chose to retire after receiving her notice of non-reappointment. She testified that she did not look for employment within higher education because she felt that another position as a professor of English was unlikely at age sixty-six. As stated above, the circuit court did not address mitigation due to its finding that the WPCA applied. Thus, the circuit court did not address whether WJU met its burden here. Accordingly, we remand this issue to allow the circuit court to reconsider the mitigation issue concerning Respondent Voorhees.

## IV. CONCLUSION

For the foregoing reasons, we affirm, in part, reverse, in part, and remand for further proceedings consistent with this opinion.

Affirmed, in Part, Reversed, in Part, and Remanded.

17